**2015 UT App 90**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JOHN ATEM JOK,
Defendant and Appellant.

Memorandum Decision
No. 20130493-CA
Filed April 16, 2015

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 121908775

Richard G. Uday, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1     Defendant John Atem Jok appeals his convictions on two counts of forcible sexual abuse, second degree felonies, and one count of intoxication, a class C misdemeanor. *See* Utah Code Ann. §§ 76-5-404, 76-9-701 (LexisNexis 2012). We reverse his convictions and remand for a new trial.

¶2	In 2012, Defendant and his codefendant, David Deng Akok, accompanied a friend to N.C.'s apartment.[1] That evening, after their friend went to work, Defendant, the codefendant, and N.C. left to purchase alcohol. The group returned to N.C.'s apartment, where, joined by N.C.'s roommate, they drank and listened to music.

¶3	N.C.'s roommate went to bed around 1:00 a.m. Sometime thereafter, N.C. fell asleep on the couch in the living room. She awoke to find Defendant touching her breasts under her shirt and bra. N.C. pushed Defendant's hands away and told him to stop, which he did. Defendant, however, then moved one of his hands under N.C.'s pants and underwear and pushed his finger into her vagina, causing "[s]harp pain."

¶4	After Defendant stopped touching N.C., his codefendant started touching N.C.'s breasts and then pulled her pants and underwear down. N.C. pulled her clothes up, but the codefendant pulled them down again. The codefendant then used both hands to hold N.C. down as he put his penis in her vagina and began intercourse. While the codefendant was on top of N.C., Defendant told N.C., "It's okay." N.C. told the codefendant, "Please, no" and "stop," but he continued, while holding her down, until "he was done."

¶5	N.C. then got up, went to her roommate's room, and told her what had happened. N.C.'s roommate asked her if she wanted to call the police, and N.C. said yes. N.C.'s roommate also told N.C. to tell Defendant and the codefendant to leave. N.C. went to the living room and told the men to leave, but they refused. N.C. told her roommate that the men would not leave, so her roommate

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted).

went to the living room with N.C. and told the men to leave, but again, the men refused. Around 6:30 a.m., N.C.'s roommate called the police and reported that the men were trespassing.

¶6     When the police arrived, Defendant, who was now outside, walked toward them. He was stumbling, had a hard time walking in a straight line, smelled of alcohol, and had bloodshot eyes. The police took both men to the police station. N.C. gave a statement to the police and filled out a witness report regarding what had happened to her. After giving her statement, N.C. went to the hospital. A sexual assault nurse examined her. N.C.'s injuries were consistent with forcible digital penetration and forcible sex, but the nurse could not conclusively confirm that N.C. had been sexually assaulted. It was later determined that semen matching the codefendant's genetic profile was in N.C.'s vagina.

¶7     Defendant was charged with two counts of forcible sexual abuse, second degree felonies, and one count of intoxication, a class C misdemeanor. *See* Utah Code Ann. §§ 76-5-404, 76-9-701 (LexisNexis 2012). Defendant and the codefendant were tried together. Before the trial began, Defendant moved to sever his trial from the codefendant's trial, but the trial court denied the motion. Defendant did not testify at trial, but as his counsel made clear during opening statement and closing argument, his defense was that he had not touched N.C.

¶8     At the end of the rebuttal portion of the prosecutor's closing argument, the prosecutor told the jury, with our emphasis:

> And when you look at the totality of the evidence it is very clear that [Defendant and the codefendant] engaged in sexual intercourse and touched her without her consent. *They took advantage of a very vulnerable victim. Don't let them take advantage of it again.* Thank you.

After closing arguments the jury left the courtroom. At that time, the codefendant's counsel objected to the "last statement of the prosecutor . . . do not make the victim a victim again" and moved for a mistrial on the ground that the statement was prejudicial. Defendant joined in the codefendant's motion. The trial court denied the motion. The codefendant's counsel then requested a specific admonition to the jurors "not to consider that statement by the prosecutor," and the prosecutor stated that he had "[n]o objections to that."

¶9　　Thereafter, the trial court called the jurors back into the courtroom. The trial court did not give the jurors the specific admonition that the codefendant requested and to which the prosecutor had no objection. Rather, the court gave what it termed a "partial admonishment" to the jury.

¶10　　After the court's admonition, the jury again left the room. The trial court then explained to the codefendant's counsel: "I did make a partial admonishment . . . . I did not do exactly what you had asked but I do feel that the admonishment I gave them was appropriate under the circumstances so that was part of my ruling." The codefendant's counsel objected to the trial court's "partial admonishment." The jury deliberated for a little over four hours and convicted Defendant as charged. Defendant appeals.[2]

¶11　　Defendant argues that the prosecutor's improper statement during the rebuttal portion of his closing argument prejudiced his right to a fair trial. This issue, regarding the prosecutor's same improper statement, was resolved by our opinion in *State v. Akok*, 2015 UT App 89. In that case, we determined that the prosecutor's statement was both improper and prejudicial, and that the admonishment was insufficient to cure the problem. *See id.* ¶¶ 16, 29. Accordingly, we concluded that there was a reasonable

---

2. The codefendant was also convicted as charged. He filed a separate appeal, which we also resolve today. *See State v. Akok*, 2015 UT App 89.

probability that, in the absence of the prosecutor's improper statement, there would have been a more favorable result for the codefendant. *See id.* ¶ 30; *State v. Gardner*, 789 P.2d 273, 287 (Utah 1989) (noting that appellate courts will reverse on the basis of prosecutorial misconduct if a defendant has shown that "the actions or remarks of counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether 'the error is substantial and prejudicial such that there is a reasonable likelihood that in its absence, there would have been a more favorable result for the defendant'"). We therefore reversed the codefendant's conviction and remanded for a new trial. *See Akok*, 2015 UT App 89, ¶ 30. For the same reasons stated in our opinion in *Akok*, we also reverse Defendant's convictions and remand for a new trial.

¶12 Defendant also contends that the trial court erred when it failed to grant his severance motion. Because resolution of Defendant's prosecutorial-misconduct claim is dispositive of this appeal, we need not definitely decide the merits of Defendant's severance argument.[3] However, because it will likely arise again on

---

3. Additionally, Defendant argues that his defense counsel's failure to assert the affirmative defense of voluntary intoxication constituted ineffective assistance of counsel. Specifically, Defendant argues that because he was intoxicated on the night he was with N.C., "it is objectively reasonable to say that trial counsel should have used [his] impairment as a defense." We disagree.

Defense counsel's failure to assert a voluntary-intoxication defense was entirely consistent with her trial strategy. Defense counsel argued during both her opening and closing that Defendant did not touch N.C. and that N.C.'s versions of events "just didn't happen." Therefore, had defense counsel presented a voluntary-intoxication defense, it would have been wholly inconsistent with Defendant's position that he did not touch N.C. Defense counsel may well have reasonably decided that she could

(continued...)

remand, we briefly address it. *See State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed[.]").

¶13 The Utah Code allows for the joinder of defendants "if they are alleged to have participated in the same act or conduct or in the same criminal episode." Utah Code Ann. § 77-8a-1(2)(b) (LexisNexis 2012). "When two or more defendants are jointly charged with any offense, they shall be tried jointly unless the court in its discretion on motion or otherwise orders separate trials consistent with the interests of justice." *Id.* § 77-8a-1(2)(d). If the trial court "finds a defendant . . . is prejudiced" by the joinder of defendants it "shall . . . grant a severance of defendants, or provide other relief as justice requires." *Id.* § 77-8a-1(4)(a). "[T]he grant or denial of severance is a matter within the discretion of the trial judge, so we reverse a conviction only if the trial judge's refusal to sever . . . is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial." *State v. Lopez*, 789 P.2d 39, 42 (Utah Ct. App. 1990) (citation and internal quotation marks omitted).

---

3. (...continued)
not credibly argue that perhaps Defendant did touch N.C. after all, but that if he did, he was too drunk to know what he was doing. Accordingly, we conclude that defense counsel's performance was not objectively deficient simply because she chose not to assert the affirmative defense of voluntary intoxication. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that to prove ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense"); *State v. Campos*, 2013 UT App 213, ¶ 34, 309 P.3d 1160 ("[A]ny election between inconsistent defenses [is] a legitimate exercise of trial strategy rather than ineffective assistance of counsel.") (alterations in original) (citation and internal quotation marks omitted).

¶14    In this case, we are not prepared to conclude that the trial court abused its discretion in the first instance. However, with the benefit of hindsight, it would appear to us that the better course on remand is for the defendants to have separate trials. Although we are largely persuaded by the State's argument that the defendants' trial theories were not so inconsistent with one another as to necessarily *require* separate trials, given the prosecutor's apparent inability or unwillingness to differentiate between the two defendants during the first trial, we conclude that separate trials appear to be in order.[4]

¶15    For the reasons discussed in *State v. Akok*, 2015 UT App 89, Defendant's convictions are reversed and the case is remanded for a new trial. If a timely motion for severance is made on remand, it merits the trial court's careful consideration.

———————

4. During the trial, the prosecutor frequently lumped the two defendants together. Although it was not even alleged that Defendant had any form of intercourse with N.C., the prosecutor's statements often attributed the act of rape to Defendant. For example, in his opening statement the prosecutor stated, with our emphasis: "She went to the hospital because she was raped and sexually assaulted by *these two individuals* early in the morning of her birthday." And during closing arguments the prosecutor stated, again with our emphasis: "And when you look at the totality of the evidence it is very clear that *they* engaged in sexual intercourse and touched her without her consent. They took advantage of a very vulnerable victim."