**2015 UT App 89**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DAVID DENG AKOK,
Defendant and Appellant.

Opinion
No. 20130498-CA
Filed April 16, 2015

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 121908776

Nathalie S. Skibine and Scott A. Wilson, Attorneys
for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ORME, Judge:

¶1 Defendant David Deng Akok appeals his conviction for rape, a first degree felony. *See* Utah Code Ann. § 76-5-402 (LexisNexis 2012). We reverse his conviction and remand for a new trial.

BACKGROUND[1]

¶2    In 2012, Defendant and his codefendant, John Atem Jok, accompanied a friend to N.C.'s apartment. That evening, after their friend went to work, Defendant, the codefendant, and N.C. left to purchase alcohol. The group returned to N.C.'s apartment, where, joined by N.C.'s roommate, they drank and listened to music.

¶3    N.C.'s roommate went to bed around 1:00 a.m. Sometime thereafter, N.C. fell asleep on the couch in the living room. She awoke to find the codefendant touching her breasts under her shirt and bra. N.C. pushed the codefendant's hands away and told him to stop, which he did. The codefendant, however, then moved one of his hands under N.C.'s pants and underwear and pushed his finger into her vagina, causing "[s]harp pain."

¶4    After the codefendant stopped touching N.C., Defendant stated that he had "to have sex for 24 hours with [N.C.], and would have fun with this girl." Defendant started touching N.C.'s breasts and then he pulled her pants and underwear down. N.C. pulled her clothes up, but Defendant pulled them down again. Defendant then used both hands to hold N.C. down as he put his penis in her vagina. N.C. told Defendant, "Please, no" and "stop," but he held her down while having sexual intercourse with her until "he was done." Defendant told N.C. that he wanted her to go to his house and sleep in his bed, but she refused.

¶5    N.C. then got up, went to her roommate's room, and told her what had happened. N.C.'s roommate asked her if she wanted to call the police, and N.C. said yes. N.C.'s roommate also told N.C. to tell Defendant and the codefendant to leave. N.C. went to the living room and told the men to leave, but they refused. N.C. told her roommate that the men would not leave, so her roommate

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted).

went to the living room with N.C. and told the men to leave. Again, the men refused. Around 6:30 a.m., N.C.'s roommate called the police and reported that the men were trespassing.

¶6     The police arrived and handcuffed Defendant, who was intoxicated to the point that he could not stand up on his own, and took both him and the codefendant to the police station. N.C. gave a statement to the police and filled out a witness report regarding what had happened to her. After giving her statement, N.C. went to the hospital. She was examined by a sexual assault nurse, who concluded that N.C.'s injuries were consistent with forcible digital penetration and forcible sex but could not conclusively confirm that N.C. had been sexually assaulted. The examination also disclosed that N.C. had semen in her vagina, which tests later confirmed matched Defendant's genetic profile.

¶7     Defendant was charged with rape, a first degree felony, and intoxication, a class C misdemeanor.[2] *See* Utah Code Ann. §§ 76-5-402, 76-9-701 (LexisNexis 2012). Defendant and the codefendant were tried together. At trial, Defendant testified that he and N.C. had consensual sex in the back seat of his car after he, the codefendant, and N.C. went to buy alcohol. He stated that he then began drinking heavily, fell asleep in N.C.'s apartment, and was still severely intoxicated when the police arrived the next morning.

¶8     At the end of the rebuttal portion of the prosecutor's closing argument, the prosecutor told the jury, with our emphasis:

> And when you look at the totality of the evidence it is very clear that [Defendant and the codefendant] engaged in sexual intercourse and touched her without her consent. *They took advantage of a very vulnerable victim. Don't let them take advantage of it again.* Thank you.

---

2. Defendant was also charged with forcible sexual abuse, *see* Utah Code Ann. § 76-5-404 (LexisNexis 2012), but that charge was dismissed before trial.

After closing arguments, the jury left the courtroom. At that time, Defendant's counsel objected to the "last statement of the prosecutor . . . do not make the victim a victim again" and moved for a mistrial on the ground that the statement was improper and prejudicial. The codefendant joined in Defendant's motion. The trial court denied the motion. Defendant's counsel then requested a specific admonition to the jurors "not to consider that statement by the prosecutor," and the prosecutor stated that he had "[n]o objections to that."

¶9     The trial court called the jurors back into the courtroom. It did not give the jurors the specific admonition that Defendant requested. Rather, the court admonished the jurors that they could only consider the evidence before them and that the attorneys' opening statements and closing arguments were not evidence.

¶10     After the court's admonition, the jury left the room again. The trial court then explained to Defendant's counsel: "I did make a partial admonishment . . . . I did not do exactly what you had asked but I do feel that the admonishment I gave them was appropriate under the circumstances so that was part of my ruling." Defendant's counsel objected to the trial court's "partial admonishment." The jury deliberated for a little over four hours and convicted Defendant of both rape and intoxication. Defendant appeals only the rape conviction.

ISSUE AND STANDARD OF REVIEW

¶11     On appeal, Defendant argues that the prosecutor committed misconduct during his closing argument and that the trial court should have mitigated the prosecutor's misconduct by issuing Defendant's requested curative admonition. We will reverse on the basis of prosecutorial misconduct if a defendant has shown that

> the actions or remarks of counsel call to the attention
> of the jury a matter it would not be justified in
> considering in determining its verdict and, if so,

under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.

*State v. Peters*, 796 P.2d 708, 712 (Utah Ct. App. 1990) (citation and internal quotation marks omitted). "In determining whether a given statement constitutes prosecutorial misconduct, the statement must be viewed in light of the totality of the evidence presented at trial." *State v. Cummins*, 839 P.2d 848, 852 (Utah Ct. App. 1992). In addition, "because the trial court is in the best position to determine the impact of a statement upon the proceedings, its rulings . . . will not be overturned absent an abuse of discretion." *Id.*

ANALYSIS

¶12　In considering the prosecutor's statement, we first analyze whether it "call[ed] to the attention of the jury a matter it would not be justified in considering in determining its verdict." *State v. Peters*, 796 P.2d 708, 712 (Utah Ct. App. 1990) (citation and internal quotation marks omitted). Second, we analyze whether "the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result." *Id.* (citation and internal quotation marks omitted).

I. Improper Statement

¶13　"In our judicial system, the prosecution's responsibility is that of a minister of justice and not simply that of an advocate, which includes a duty to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." *State v. Todd*, 2007 UT App 349, ¶ 17, 173 P.3d 170 (citation and internal quotation marks omitted). Therefore, "the

conduct of the prosecutor at closing argument is [appropriately] circumscribed by the concern for the right of a defendant to a fair and impartial trial." *Id.* (alteration in original) (citation and internal quotation marks omitted). Accordingly, "while prosecutors must have the freedom to present closing argument with logical force, they must also act within the constraints imposed upon their office." *Id.* ¶ 18.

¶14     In this case, during the prosecutor's rebuttal, he told the jury:

> And when you look at the totality of the evidence it is very clear that [Defendant and the codefendant] engaged in sexual intercourse and touched her without her consent. They took advantage of a very vulnerable victim. Don't let them take advantage of it again. Thank you.

Defendant argues that this statement was improper because the "prosecutor's remark . . . appealed to the jurors' emotions and diverted their attention from their legal duty to determine guilt impartially." We agree.[3]

¶15     In *State v. Wright*, 2013 UT App 142, 304 P.3d 887, the prosecutor's final statement to the jury during the rebuttal phase of closing arguments was "You have the power to make that [the abuse] stop." *Id.* ¶ 41. We noted that the prosecutor's statement did not rebut any statements made by the defendant; rather, the statement called on the jury "to assume the responsibility of ensuring [the victim's] safety." *Id.* Ultimately, we determined that the prosecutor's statement was improper because it "appeal[ed] to the jurors' emotions by contending that the jury ha[d] a duty to protect the alleged victim—to become her partisan—which

---

3. Because the prosecutor agreed to a curative instruction, the State assumes in its brief, without conceding, that the prosecutor's statement was improper.

divert[ed] their attention from their legal duty to impartially apply the law to the facts." *Id.*

¶16    Here, the prosecutor's statement during the rebuttal portion of closing arguments—"They took advantage of a very vulnerable victim. Don't let them take advantage of it again."—similarly appealed to the jurors' emotions. The statement suggested to the jurors that they had a duty to protect N.C., or perhaps women generally, from Defendant and the codefendant. And it suggested that an acquittal would allow Defendant and the codefendant to take advantage of N.C. or other women again. In other words, the statement called on the jury to "assume the responsibility of ensuring [N.C.'s] safety." *See id.* As we determined in *Wright*, such statements divert the jury's attention from its legal duty to impartially apply the law to the facts. *See id.* Accordingly, we conclude that the prosecutor's statement was improper and called the jurors' attention to matters they were not justified in considering in reaching their verdict. *See Peters*, 796 P.2d at 712.

## II. Prejudice

¶17    We now consider the second step of the prosecutorial-misconduct analysis, i.e., whether, under the facts of this case, the error was "substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result" for Defendant. *Id.* (citation and internal quotation marks omitted). In making this assessment, "we are mindful that [a] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *State v. Todd*, 2007 UT App 349, ¶ 31, 173 P.3d 170 (alteration in original) (citation and internal quotation marks omitted). Rather, improper comments by the prosecutor require reversal only if they "substantially affected the defendant's right to a fair trial." *Id.* (citation and internal quotation marks omitted). "That threshold is met when the likelihood of a different outcome [is] sufficiently high to undermine [our] confidence in the verdict." *State v. Thompson*,

2014 UT App 14, ¶ 83, 318 P.3d 1221 (alterations in original) (citation and internal quotation marks omitted).

¶18    Defendant argues that there is a reasonable likelihood that he would have been acquitted if not for the prosecutor's statement and that, at a minimum, the trial court should have mitigated the prosecutor's misconduct by issuing the specific curative instruction Defendant requested and to which the prosecutor had no objection. We agree.

¶19    The prejudice prong of prosecutorial-misconduct analysis requires "consideration of the circumstances of the case as a whole." *State v. Troy*, 688 P.2d 483, 486 (Utah 1984). In undertaking this analysis, we look at the evidence of the defendant's guilt, "whether defense counsel addressed the improper statements during closing argument and the prosecution then 'restricted his surrebuttal comments to the evidence and made no further mention of' the improper comments," and "whether the trial court gave a curative instruction admonishing the jury to 'dispassionately consider and weigh the evidence' and instructing them 'not to consider the statements of counsel as evidence.'" *Todd*, 2007 UT App 349, ¶¶ 33–34 (quoting *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993)).

A.    Evidence of Defendant's guilt

¶20    In determining whether there was prejudice, it is appropriate to look at the evidence of Defendant's guilt.

> If proof of [D]efendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial. Likewise, in a case with less compelling proof, [Utah courts] will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel.

*Troy*, 688 P.2d at 486 (citation and internal quotation marks omitted).

¶21 Here, there was not overwhelming proof of Defendant's guilt. The State's case relied heavily upon N.C.'s testimony that Defendant raped her, which Defendant denied. Although Defendant's semen was found inside N.C.'s vagina, Defendant testified that he and N.C. had consensual sex in his car after they drove to the store to buy alcohol. The nurse also testified that while N.C.'s injuries were consistent with rape, there was "no way to tell definitively" from N.C.'s injuries if they resulted from consensual or nonconsensual contact. Consequently, "the jurors were tasked with weighing [the] conflicting evidence and deciding who was telling the truth" as between Defendant and N.C. *See Thompson*, 2014 UT App 14, ¶ 84. Inviting the jury to tip the credibility balance in a way that would prevent Defendant and the codefendant from revictimizing N.C. provided the jurors with a way to avoid their ultimate—possibly difficult—responsibility, to the potential prejudice of Defendant. In this case, the jury could have gone either way based on the evidence presented at trial. Thus, there is a "greater likelihood" that the jury was influenced by the prosecutor's improper statement. *See Troy*, 688 P.2d at 486.

B.      Defense counsel's inability to address the improper statement

¶22 Generally, if the prosecutor makes an improper comment during his initial closing argument, "defense counsel can ameliorate the effects of the comment by discussing the impropriety with the jurors." *State v. Todd*, 2007 UT App 349, ¶ 41, 173 P.3d 170. But here, the prosecutor's improper statement came during the rebuttal phase of his closing argument, and defense counsel did not have the opportunity to address the prosecutor's improper statement in the ordinary course or to ameliorate any harmful effects of the statement. *See United States v. Holmes*, 413 F.3d 770, 776 (8th Cir. 2005) ("It is particularly disturbing that the comments were made during the rebuttal phase of closing argument" when "[d]efense counsel was left with no opportunity

to rebut the allegations and the jury heard the remark immediately before deliberations."). As the Eighth Circuit has noted, "[t]he potential for prejudice is great during closing arguments, especially when the defense has no opportunity for rebuttal." *Id.* Accordingly, because defense counsel was unable to respond to the prosecutor's improper statement, the potential for prejudice was heightened in this case.

C.     The trial court's curative admonition

¶23     "[C]urative instructions are a settled and necessary feature of our judicial process and one of the most important tools by which a court may remedy errors at trial." *State v. Harmon*, 956 P.2d 262, 271 (Utah 1998). However, the Utah Supreme Court has recognized that curative instructions are not a "cure-all." *Id.* at 273. Indeed, "[s]ome errors may be too prejudicial for curative instructions to mitigate their effect, and a new trial may be the only proper remedy." *Id.*

¶24     In this case, after the parties gave their closing arguments, the jury left the courtroom and Defendant objected to the "last statement of the prosecutor . . . do not make the victim a victim again," and he moved for a mistrial. The trial court denied Defendant's motion, stating that it had "clearly instructed [the jury] that opening statements and closing arguments are the statements of the attorneys and that they are giving those statements from their perspective and what they are advocating." Defendant then requested a specific admonition to the jury "that they are not to consider that statement by the prosecutor." The prosecutor expressly stated that he had no objection to Defendant's requested admonition. In that posture, the path of least resistance is for the trial court to simply give the agreed-upon admonition. Instead, when the jury came back into the courtroom, the trial court gave what it termed a "partial admonishment" to the jury:

> I am going to admonish you a couple of things then because we are going to be having a longer recess. . . . [I]t is important . . . as you deliberate that

you remember my instructions that you make your decisions based upon the evidence that is presented at trial.

You remember my admonition to you that the closing arguments . . . that are fresher [in] your mind are the statements of the attorneys and that . . . their arguments have been made from the perspective of the client that they are representing[,] that those arguments are made for the purpose of being persuasive but they are not a statement of instruction, they are not a statement of the law[,] and they are not the statement of evidence.

You need to look to your collective memories of what the evidence is and to follow the laws in the instruction and to not take into—to not take any comment made by the attorney whether it's a [reflection of] the defendants or whether it's a reflection of the witnesses that have testified at trial. You must look to the evidence and not accept as evidence any characterization or recollection on the witnesses or the parties in this case.

¶25    After reviewing the trial court's admonition to the jury, we cannot say that it adequately dealt with the prosecutor's improper statement. Although the trial court generally admonished the jury that the closing arguments were not evidence and that the jury was to base its decision solely on the evidence, the court's admonition did not neutralize the prejudicial effect of the prosecutor's statement for two reasons.

¶26    First, the trial court's admonition did not vary in any significant manner from the general instructions it gave the jury both before trial and before closing arguments. For example, before the trial began, the trial court gave several preliminary instructions to the jury, one of which instructed the jury to base its decision solely on the law and the evidence presented in court and informed

it that closing arguments are not evidence.[4] Before closing arguments, the trial court read to the jury the remaining jury instructions, two of which instructed the jury that the lawyers' arguments were not evidence. Jury instruction fifteen read: "[B]ase your decision only on the evidence that you saw and heard here in court . . . . The lawyers['] statements and arguments are not evidence." And jury instruction forty-three stated:

> When the lawyers give their closing arguments, keep in mind that they are advocating their views of the case. What they say during their closing arguments is not evidence. If the lawyers say anything about the evidence that conflicts with what you remember, you are to rely on your memory of the evidence. If they say anything about the law that conflicts with these instructions, you are to rely on these instructions.

¶27   Second, and most importantly, the court's admonition failed to explicitly call the jurors' attention to the prosecutor's specific improper statement. Rather than giving an admonition that was specifically tailored to the prosecutor's improper statement like Defendant requested (and to which the prosecutor had no objection), the trial court simply repeated a variation of the boilerplate instructions the jury had heard at least three times

---

4. Specifically, the trial court told the jury:

> The lawyers will present and try to persuade you to decide the case in one way or the other. . . . Do not be influenced by what you think our opinions might be, make your decisions based on the law given in my instructions and on the evidence presented in court. . . . You must base your decision only on the evidence. Evidence usually consists of the testimony and exhibits presented at trial. . . . What the lawyers say is not evidence. For example, their opening statements and closing arguments are not evidence.

before. *Cf. Harmon*, 956 P.2d at 269–71 (concluding that the trial court's "forceful, explicit instruction to the jury to disregard the 'totally and absolutely inappropriate' comment" effectively cured the serious error that occurred when a deputy testified as to the defendant's credibility).

¶28    With the exception of the trial court's statement that it thought that its partial admonishment "was appropriate under the circumstances," we are left without explanation as to why the trial court did not give Defendant's specific requested admonition. Given that the prosecutor had no objection to Defendant's requested admonition, the trial court's decision to give an admonition different from the one requested seems, absent some explanation, rather arbitrary. The trial court had the opportunity to dispel the emotional force of the State's argument that an acquittal would allow Defendant and his codefendant to take advantage of N.C. or others again, and yet, for reasons unknown, the court chose not to do so. We think it appropriate that in a situation such as this, where a defendant requests a specific curative admonition that is not contrary to law and to which the prosecutor has no objection, the trial court should simply give the curative admonition as requested. That is the safest path for the trial court to take. Of course, the trial court may perceive some problem with the stipulated admonition that counsel have missed. In such a situation, the trial court should explain the reasoning behind its decision to give an admonition different from the one requested and give counsel an opportunity to respond.[5]

---

5. We tend to defer to trial courts because we have a cold record and because trial courts are in the best position to observe the jury's reaction to an improper statement. *See Doug Jessop Constr., Inc. v. Anderton*, 2008 UT App 348, ¶ 15, 195 P.3d 493 ("A trial judge is in the best position to . . . derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record.") (omission in original) (citation and internal quotation marks omitted). However, because we were not in the courtroom, if a trial court's determination on whether to give a curative

(continued...)

¶29    In this case, the trial court neither gave the stipulated admonition nor explained its specific reasoning for improvising rather than giving the agreed-upon admonition. While the trial court's admonition might be sufficiently curative in some situations, we do not believe it was sufficient in this case because it failed to specifically address the prosecutor's improper statement. *Cf. Harmon*, 956 P.2d at 271. Accordingly, we conclude that the trial court's watered-down admonition did not adequately cure the prejudicial effect of the prosecutor's improper statement and that Defendant was prejudiced by the remark.

## CONCLUSION

¶30    The prosecutor's final statement in closing argument appealed to the jurors' emotions, and it was therefore improper and constituted prosecutorial misconduct. Moreover, when the prosecutor's statement is considered in conjunction with the conflicting evidence of Defendant's guilt, defense counsel's inability to address the prosecutor's improper statement, and the court's nonspecific curative admonition, our confidence in the verdict is undermined. We are convinced that there is a reasonable likelihood that, in the absence of the prosecutor's improper statement, there would have been a more favorable result for Defendant. Accordingly, we reverse Defendant's rape conviction and remand for a new trial on that charge.

_____

5. (...continued)
admonition and on what kind of curative admonition to give turns on some factor that we cannot perceive from the record, it is incumbent on the trial court to explain the reasoning behind its decision.