**2015 UT App 176**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DENNIS WAYNE LAMBDIN,
Defendant and Appellant.

Opinion
No. 20130521-CA
Filed July 16, 2015

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 091906736

Joanna E. Landau and McCaye Christianson,
Attorneys for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

ROTH, Judge:

¶1 Dennis Wayne Lambdin appeals his conviction for murder. Lambdin contends that the trial court erroneously instructed the jury on the elements of special mitigation by extreme emotional distress. Lambdin also argues that the State misstated the law when it described extreme emotional distress to the jury. Finally, Lambdin asserts that he was prejudiced by the cumulative effect of those errors. We affirm.

BACKGROUND

¶2     In August 2009, Lambdin killed his wife in their kitchen. Lambdin never denied that he killed her. Instead, he asserted that his actions were the result of extreme emotional distress brought on by years of marital strife, his wife's heavy drinking, her affair and resulting pregnancy, and her expressed intention to divorce him.

¶3     At Lambdin's request, the trial court agreed to instruct the jury on the elements of special mitigation by extreme emotional distress. If Lambdin could prove extreme emotional distress by a preponderance of the evidence, the jury would be required to return a verdict of manslaughter instead of murder. *See* Utah Code Ann. § 76-5-205.5(5)(b)(iii) (LexisNexis 2012).[1] Both Lambdin and the State proposed instructions on extreme emotional distress, but the court prepared and gave its own instructions to the jury.[2] In his closing statement, the prosecutor described extreme emotional distress consistent with the pertinent jury instructions. The jury convicted Lambdin of murder, unanimously finding by special verdict that Lambdin had not proven special mitigation by a preponderance of the evidence. Lambdin appeals.

ISSUES AND STANDARDS OF REVIEW

¶4     Lambdin first argues that three of the trial court's jury instructions contained "erroneous statements of Utah law on

---

1. The relevant statutory provisions have not been amended since the time that Lambdin committed the crime. We therefore cite the current version of the Utah Code.

2. A previously assigned judge prepared the instructions given at trial.

special mitigation by EED." "[W]hether a jury instruction correctly states the law presents a question of law which we review for correctness." *State v. Weaver*, 2005 UT 49, ¶ 6, 122 P.3d 566 (citation and internal quotation marks omitted); *see also State v. Stringham*, 2001 UT App 13, ¶ 17, 17 P.3d 1153 ("Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." (citation and internal quotation marks omitted)).

¶5    Second, Lambdin asserts that the prosecutor committed misconduct when he "mis-informed [the jury] on the law of special mitigation by EED" during closing argument. *See State v. Akok*, 2015 UT App 89, ¶ 11, 348 P.3d 377 (stating that a prosecutor may not "call to the attention of the jury a matter it would not be justified in considering in determining its verdict" (citation and internal quotation marks omitted)). We consider whether the prosecutor's remarks departed from applicable law as a question of law.[3]

---

3. As part of its argument on appeal, the State contends that Lambdin invited any error in the instructions and the prosecutor's closing statement because Lambdin proposed a jury instruction that contained the same language as the given instructions. Lambdin, however, objected to the trial court's instructions on the same grounds he asserts on appeal, and the trial court resolved Lambdin's objections on the merits. *See State v. Relyea*, 2012 UT App 55, ¶ 23, 288 P.3d 278 (explaining that an issue is preserved for appeal if the issue was "presented to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue" (alteration in original) (citation and internal quotation marks omitted)). We likewise address Lambdin's claims on the merits.

ANALYSIS

I. Jury Instructions

¶6    Lambdin first contends that the trial court failed to correctly instruct the jury on the elements of special mitigation by extreme emotional distress. We conclude that the court's instructions accurately described Utah law.

A.    Special Mitigation by Extreme Emotional Distress

¶7    The Utah Legislature has determined that "[s]pecial mitigation exists" to reduce certain murder charges "when the actor causes the death of another . . . under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." Utah Code Ann. § 76-5-205.5(1)(b), (5) (LexisNexis 2012). The burden lies with the defendant to establish the requisite extreme emotional distress by a preponderance of the evidence. *State v. Drej*, 2010 UT 35, ¶ 21, 233 P.3d 476.

¶8    The special mitigation statute does not define extreme emotional distress. In the absence of an express statutory definition, the Utah Supreme Court has defined extreme emotional distress as "extremely unusual and overwhelming stress that would *cause the average reasonable person* under the same circumstances *to experience a loss of self-control*, and be overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions." *State v. White*, 2011 UT 21, ¶ 26, 251 P.3d 820 (emphasis added) (citation and internal quotation marks omitted); *accord State v. Spillers*, 2007 UT 13, ¶ 14, 152 P.3d 315 ("A person suffers extreme emotional distress when exposed to extremely unusual and overwhelming stress such that the average reasonable person would react by experiencing a loss of self-control." (citation and

internal quotation marks omitted)),[4] *abrogated on other grounds by State v. Reece*, 2015 UT 45, 349 P.3d 712. Certain stressors, however, such as those created by the defendant's own conduct or those "resulting from mental illness as defined in [Utah Code] Section 76-2-305," cannot mitigate a defendant's actions that cause death. Utah Code Ann. § 76-5-205.5(3). "Thus, 'an external triggering event is also required.'" *State v. Campos*, 2013 UT App 213, ¶ 30, 309 P.3d 1160 (quoting *White*, 2011 UT 21, ¶ 32).

¶9    Whether external stressors are sufficient to cause a person to lose self-control must be viewed in the "broader context," taking into account any external "mental trauma [that] has affected a defendant's mind for a substantial period of time." *White*, 2011 UT 21, ¶¶ 30–31. Although the statute requires consideration of "the circumstances surrounding a defendant's extreme emotional distress, those circumstances must be viewed from the viewpoint of a reasonable person." *Id.* ¶ 36 (citation and internal quotation marks omitted); *see also* Utah Code Ann. § 76-5-205.5(4) ("The reasonableness of an explanation or excuse . . . shall be determined from the viewpoint of a reasonable person under the then existing circumstances."). Thus, when a defendant asserts extreme emotional distress, the factfinder may

---

4. These two cases applied an earlier version of the statute. That version made extreme emotional distress an affirmative defense to murder that, once properly raised, the State was required to disprove beyond a reasonable doubt. Utah Code Ann. § 76-5-203(4)(a) (LexisNexis 2008). Although extreme emotional distress is now a special mitigating circumstance that the defendant bears the burden of proving, *id.* § 76-5-205.5(5)(a) (LexisNexis 2012), the definition of extreme emotional distress has not changed. *Compare id., with id.* § 76-5-203(4)(a) (LexisNexis 2008). Thus, "nothing in the language of the [amended special mitigation] statute . . . suggest[s] a departure from [the] precedent defining extreme emotional distress." *State v. Campos*, 2013 UT App 213, ¶ 30 n.6, 309 P.3d 1160.

examine the circumstances—both historical and contemporaneous to the murder—to determine whether "objectively, a reasonable person would have experienced an extreme emotional reaction and loss of self-control under the circumstances." *Ross v. State*, 2012 UT 93, ¶ 28, 293 P.3d 345; *accord White*, 2011 UT 21, ¶ 36.

¶10 We now examine the instructions given by the trial court in light of the applicable law.

B. The Jury Instructions

¶11 Although the trial court gave the jury seven instructions relating to extreme emotional distress, this appeal implicates only three of them—Jury Instructions 19, 20, and 21. Jury Instruction 19 reads,

> Criminal homicide constitutes manslaughter if the defendant commits murder, but Special Mitigation is established. Special Mitigation generally involves a factor or set of factors that make a person less blameworthy for a criminal act. Special Mitigation exist[s] when a person causes the death of another under the influence of extreme emotional distress for which there was a reasonable explanation or excuse. In this case, the defendant asserts that Special Mitigation exists because he caused the death of another under the influence of extreme emotional distress for which there was a reasonable explanation or excuse.
>
> A person acts under the influence of extreme emotional distress when he is exposed to extremely unusual and overwhelming stress that would cause the average reasonable person in similar circumstances to experience a loss of self-control and be overborne by intense feelings such

as passion, anger, distress, grief, excessive agitation, or other like emotions. The standard is not whether the defendant subjectively thought his reaction was reasonable. Rather, it is an objective standard, determined from the viewpoint of a reasonable person faced with the then-existing circumstances.

Jury Instruction 20 provides,

Although a building emotional reaction to a series of events may contribute to extreme emotional distress, an external triggering event is also required. However, the triggering event need not be contemporaneous with the Defendant's loss of self-control.

Finally, Jury Instruction 21 states,

In examining the reasonableness of the explanation or excuse offered by the defendant you should consider all the then-existing circumstances. "Then-existing circumstances" include more than just the triggering event. The phrase refers to the broader context of past experiences and emotions that give meaning to the defendant's reaction, that is to say, to the defendant's loss of self control.

¶12    Jury Instructions 19, 20, and 21 correctly informed the jurors of the factors that they should take into account in considering whether Lambdin met the requirements of extreme emotional distress. Instruction 19 informs the jury that it could find that Lambdin was acting under extreme emotional distress if he were "exposed to extremely unusual and overwhelming stress that would cause the average reasonable person in similar circumstances to experience a loss of self-control and be

overborne by intense feelings such as passion, anger, distress, grief, excessive agitation, or other like emotions." This language is almost verbatim the definition of extreme emotional distress set out in our precedent. *See, e.g.*, *State v. White*, 2011 UT 21, ¶ 26, 251 P.3d 820. In addition, Instruction 19 informs the jury that the loss of self-control resulting from the extreme emotional distress must be viewed from a reasonable person's point of view. *See* Utah Code Ann. § 76-5-205.5(4) (LexisNexis 2012) ("The reasonableness of an explanation or excuse . . . shall be determined from the viewpoint of a reasonable person under the then existing circumstances."). Finally, Instructions 20 and 21 properly instruct the jury to consider the reasonableness of the loss of control not only in the context of any triggering event but under all "then-existing circumstances," which include "past experiences and emotions that give meaning to [Lambdin's] reaction." These instructions are consistent with both the statutory language establishing special mitigation and the case law interpreting that statute. *See id.* § 76-5-205.5; *Ross*, 2012 UT 93, ¶ 28; *White*, 2011 UT 21, ¶ 36.

C.     Lambdin's Arguments

¶13     Lambdin nevertheless contends that these instructions contain two errors. First, he contends that the second paragraph of Instruction 19 "wrongly told jurors Mr. Lambdin's loss of self-control had to be reasonable for the defense to apply." Instruction 19 instructs the jury that "[a] person acts under the influence of extreme emotional distress when he is exposed to extremely unusual and overwhelming stress that would cause the average reasonable person in similar circumstances to experience a loss of self-control." It then informs the jury to consider whether the "reaction was reasonable" using an "objective standard, determined from the viewpoint of a reasonable person faced with the then existing circumstances." Lambdin argues that the jury instead should have been told that it "needed to find [only] that the circumstances provided a reasonable explanation or excuse for the emotional reaction" that

ultimately led to a loss of self-control. In other words, Lambdin asserts that extreme emotional distress requires only a reasonable emotional reaction; it does not require the resulting loss of self-control or murder to be reasonable. Interpreting extreme emotional distress to require a reasonable loss of self-control, Lambdin contends, would obviate extreme emotional distress as a mitigating circumstance because it is "inherently unreasonable to lose self-control and kill someone."

¶14 Lambdin relies on the statutory language providing that a murder is mitigated if it is committed "under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." Utah Code Ann. § 76-5-205.5(1)(b). Nothing in the statutory language, he contends, requires a reasonable loss of self-control. Lambdin asserts that our precedent can be fairly read to support his interpretation of the statute. For example, he argues that the following language from *State v. Shumway*, 2002 UT 124, 63 P.3d 94, shows that the law requires only the extreme emotional distress, not the loss of self-control and resulting murder, to be reasonable: "the average reasonable person under that stress would have an extreme emotional reaction to it, as a result of which he would experience a loss of self-control." *Id.* ¶ 9 (citation and internal quotation marks omitted). This language, Lambdin asserts, demonstrates that the loss of self-control and killing are merely by-products of the extreme emotional distress and thus cannot be within the scope of what the legislature intended to require "a reasonable explanation or excuse." *See* Utah Code Ann. § 76-5-205.5(1)(b).

¶15 The State counters that although the statute explicitly requires only the extreme emotional distress to be reasonable, the statute does not define what the term extreme emotional distress entails. Instead, that term has been judicially defined in the process of interpreting and applying the statute. And as discussed above, our appellate courts have defined extreme emotional distress itself to include a loss of self-control, i.e., "extremely unusual and overwhelming stress that would *cause*

*the average reasonable person under the same circumstances to experience a loss of self-control."* White, 2011 UT 21, ¶ 26 (emphasis added) (citation and internal quotation marks omitted); *see also Ross v. State*, 2012 UT 93, ¶ 28, 293 P.3d 345 (stating that to mitigate murder, the factfinder must determine that "objectively, *a reasonable person would have experienced an extreme emotional reaction and loss of self-control* under the circumstances" (emphasis added)). Thus, the State argues that in determining whether there is a reasonable explanation or excuse for the extreme emotional distress, the jury must necessarily assess the reasonableness of the loss of control.

¶16 We agree with the State that the pertinent case law does not support Lambdin's interpretation of the statute's reasonableness requirement. Indeed, there appears to be good reason for requiring a defendant to demonstrate that a reasonable person would experience both extreme emotional distress and a loss of self-control under the circumstances. Extreme emotional distress "substantially *enlarge*[*s*] the class of [murder] cases that might be reduced to manslaughter." *White*, 2011 UT 21, ¶ 25 (citation and internal quotation marks omitted). Therefore, it should apply only in cases where there is a compelling reason for reducing the consequences for what would otherwise be murder.

> "As with most cases where this defense may be properly asserted, the issue presented is a very close one since all intentional homicides, with the exception of those by cold-blooded killers or in the course of a felony, are abnormal acts for the perpetrators and the result of strong emotions and stresses. Consequently, a distinction must be drawn so that this defense will only be applicable to those homicides which appropriately qualify under the underlying purpose of this mitigating defense and not en masse to all acts constituting murder . . . ."

*Id.* ¶ 22 (quoting *People v. Shelton*, 385 N.Y.S.2d 708, 710 (Sup. Ct. 1976)). Requiring the loss of self-control to be reasonable furthers this purpose. Lambdin contends that special mitigation should apply whenever a reasonable person experiences extreme emotional distress, whether or not "the average reasonable person under the same circumstances [would] experience a loss of self-control and be overborne by intense feelings" that resulted in that person causing (or attempting to cause) the death of another, *see id.* ¶ 26 (citation and internal quotation marks omitted). Were this the case, however, extreme emotional distress could mitigate any homicide resulting from "strong emotions and stresses," arguably omitting only those involving cold-blooded calculation. *See id.* ¶ 22 (citation and internal quotation marks omitted). Such an interpretation is inconsistent with the statute's purpose of mitigating murder only for "those homicides which appropriately qualify" and "not en masse to all acts constituting murder."[5] *Id.* (citation and internal quotation marks omitted).

---

5. Indeed, one scholar has argued that extreme emotional distress ought to mitigate guilt only when the defendant has committed a murder under circumstances where the loss of self-control is rationally proportional to the provocation. Victoria Nourse, *Passion's Progress: Modern Law Reform and the Provocation Defense*, 106 Yale L.J. 1331, 1337–38 (1997). For example, though neither is ultimately justified, a defendant killing his wife's rapist is arguably more understandable than a defendant killing his wife for simply leaving him for another, though both may engender strong emotions. *Id.* In the former example, the defendant's "emotional judgments are inspired by a belief in a 'wrong' that is no different than the law's own: Ex ante, there is no doubt that the rape is wrong for the defendant and the victim and the defendant's 'outrage' is 'understandable' from this perspective." *Id.* (footnote omitted). In the latter, however,

(continued…)

¶17    Furthermore, we are not persuaded by Lambdin's concern that requiring the loss of self-control to be reasonable would essentially eliminate extreme emotional distress as a mitigating circumstance because such a reasonableness requirement would place the jurors "in the untenable position of having to find a killing or other criminal act 'reasonable.'" Requiring that external emotional stressors trigger a loss of self-control that is reasonable does not also mandate that the jury find the criminal act that follows is reasonable. Rather, the loss of self-control is separate and distinct from the ensuing killing. And all three instructions implicated in this appeal clearly maintain that distinction. Instruction 19 told the jury that it must find special mitigation if Lambdin "caused the death of another" as a result of "extreme emotional distress for which there was a reasonable explanation or excuse." The reasonableness requirement in Instruction 19 is not tied in any way to the resulting death. And Instructions 20 and 21 inform the jury how it should evaluate the reasonableness of Lambdin's "loss of self control" without any mention of the death resulting from that loss of control. Indeed, Lambdin's trial counsel recognized this distinction and emphasized it to the jury when making Lambdin's case for extreme emotional distress in her closing statement. Counsel informed the jury that "another key thing" about the instructions is that they are "instructing you to look toward the meaning and the reasons for the defendant's loss of self control, and *to assess the reasonableness of that*, *the loss of self control*, *not the killing*." (Emphasis added.) In other words, counsel explained, the jury need not "find that a reasonable person would absolutely have committed this killing, but that a reasonable person would have experienced a loss of self control."

---

(…continued)
leaving a spouse is not a "'wrong'" that the law punishes. *Id.* at 1338. "To embrace the defendant's emotional judgments in these latter circumstances not only allows the defendant to serve as judge and executioner, but also as legislator." *Id.*

¶18 Accordingly, we conclude that there was no error in Instruction 19's requirement that the stress "cause the average reasonable person in similar circumstances to experience a loss of self-control."

¶19 Lambdin's second contention is that Instruction 20 failed to explain to the jury that it could consider the events leading up to the extreme emotional distress and instead "conflated special mitigation by EED with a heat of passion defense," which requires an immediate provocation. He argues that the jury therefore did not understand that it could consider the "decade of marital difficulties and strife" between Lambdin and his wife to determine whether he had a reasonable explanation or excuse for his extreme emotional distress. He further contends that Instruction 21 did not adequately clarify Instruction 20 because Instruction 21 instructed the jury to consider a "broader context of past experiences" in assessing whether Lambdin's loss of self-control, not his extreme emotional distress, was reasonable.

¶20 The State responds that Instructions 20 and 21 adequately convey to the jury that it could consider more than just the events surrounding Lambdin's wife's death. The State points specifically to the language in Instruction 20 that a "building emotional reaction to a series of events may contribute to extreme emotional distress" and the explanation in Instruction 21 that the circumstances the jury should consider in assessing the reasonableness of the extreme emotional distress include "the broader context of past experiences and emotions that give meaning to [Lambdin's] reaction, that is to say, to [Lambdin's] loss of self control."

¶21 We agree with the State. When read together Instructions 20 and 21 adequately convey to the jury that it should consider both the circumstances at the time of the murder and Lambdin's past experiences with his wife when assessing whether he was exposed to extremely unusual and overwhelming stress. *See State v. Lee*, 2014 UT App 4, ¶ 23, 318 P.3d 1164 (explaining that

on appeal, "we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case" (citation and internal quotation marks omitted)). Furthermore, during closing statement, Lambdin's counsel cited these instructions and focused specifically on the language in Instruction 21 by urging the jury to consider Lambdin's "whole life with [his wife], . . . the ten years of their marriage" and to use "that context of past experiences and emotions [to] give meaning to his reaction, which is his loss of self control."

¶22 We therefore conclude that there were no errors in the jury instructions because Instructions 19, 20, and 21 described special mitigation by extreme emotional distress consistent with Utah law. Because there was no error, we do not reach Lambdin's prejudice arguments.

## II. Prosecutor's Closing Statement

¶23 Lambdin's next contention is that the prosecutor committed prosecutorial misconduct in describing extreme emotional distress during his closing statement.[6] The prosecutor reiterated the crux of the jury instructions:

> I want to talk about a couple things with regards to [I]nstruction 21, then existing circumstances. This is the idea that the person's emotional response is not in a vacuum, but, rather, the circumstances that the person was living in at the time. Then existing

---

6. The State contends that there is a distinction between prosecutorial misconduct and prosecutorial error and that Lambdin's complaint about the prosecutor's conduct amounted, at most, to prosecutorial error. Because we conclude that the prosecutor did not misstate the law, we do not believe the distinction asserted by the State is significant here.

circumstances give meaning to the defendant's reaction. That is, given these circumstances he was living in would a reasonable person act similarly? Said another way, *would a reasonable person in his circumstances experience a complete loss of self control*?

Now, . . . it's not a matter of whether the State or even you believe that he experienced a loss of control and that he snapped. That's not the point. *The question is whether a reasonable person in those circumstances would have experienced this complete loss of control.* And the simple answer to this question [of] whether a reasonable person in those circumstances would have experienced a complete loss of control is of course not.

(Emphasis added.)

¶24    According to Lambdin, this statement "mis-informed [the jury] on the law of special mitigation." Lambdin's contention is grounded in the same reasoning as his erroneous-jury-instruction claim. Because we have determined that the instructions did not misstate the law on special mitigation by extreme emotional distress, we also conclude that the prosecutor did not engage in misconduct when he used the same standard to discuss it in closing. *See State v. Akok*, 2015 UT App 89, ¶ 11, 348 P.3d 377 (explaining that to commit prosecutorial misconduct, the prosecutor must "call to the attention of the jury a matter it would not be justified in considering in determining its verdict" (citation and internal quotation marks omitted)).

### III. Cumulative Error

¶25    Finally, Lambdin asserts that "the cumulative effect of the multiple errors undermines confidence in the fairness of [Lambdin's] trial." *See State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993). "If the claims are found on appeal to not constitute error,"

however, "the doctrine [of cumulative error] will not be applied." *State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878. We have concluded that there were no errors in either the jury instructions or the prosecutor's closing statement. Thus, the cumulative error doctrine does not apply.

## CONCLUSION

¶26     We conclude that neither the court nor the prosecutor erred because both the jury instructions and the prosecutor's closing statement, which tracked those instructions, correctly stated the law for proving special mitigation by extreme emotional distress. We therefore affirm Lambdin's conviction for murder.

––––––––––