2005 UT App 314

Kaziah May HANCOCK and Cindy
Stewart, Plaintiffs, Appellees,
and Cross-appellants,

v.

The TRUE and LIVING CHURCH OF JE-
SUS CHRIST OF SAINTS OF the LAST
DAYS, James D. Harmston, William B.
Lithgow, Keith Larson, Daniel (Dan)
Simmons, Kay Crabtree, Jeff Hanks,
Bart Mulstrom, John Harper, and John
Does Nos. 1–5, Defendants, Appellants,
and Cross-appellees.

No. 20030984–CA.

Court of Appeals of Utah.

July 8, 2005.

F. Kevin Bond, Bond & Call, LC, Salt Lake City, for Appellants.

Don S. Redd, Layton, and Clark R. Nielsen, Smith Hartvigsen, PLLC, Salt Lake City, for Appellees.

Before Judges BILLINGS, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Kaziah May Hancock and Cindy Stewart (collectively Plaintiffs) sued the True and Living Church of Jesus Christ of Saints of the Last Days (the Church) and various associated individuals (collectively Defendants), alleging that they had both given substantial sums of money to the Church and had not received promised benefits in return. These interlocutory cross appeals arise from the trial court's rulings partially granting and partially denying Defendants' motion to dismiss all of Plaintiffs' claims, and denying Plaintiffs' motion for leave to file their Third Amended Complaint. We reverse the trial court's order denying leave to amend and remand this matter for further proceedings.

## BACKGROUND [1]

¶ 2 The Church is a religious group founded and led by defendant James D. Harmston in Sanpete County, Utah. Plaintiffs are Utah residents who became associated with the Church in the mid–1990s. Soon thereafter, both Plaintiffs were convinced to give substantial sums of money to the Church in exchange for certain promises.

¶ 3 Hancock joined the Church in 1993. In 1996, she met with Church leaders to establish a "stewardship" for her in exchange for her contributions of time and money to the Church. The Church promised her that if she "consecrated" her money to the Church, the Church would provide her with property and support. The Church also promised cer-

---

1. In light of the procedural posture of this case, we determine that the most appropriate source of background facts for this opinion is Plaintiffs' Second Amended Complaint. We recognize that these are only allegations and that they may be disputed between the parties.

tain religious benefits, including a face to face meeting with Jesus Christ. Hancock received none of the promised benefits and was asked to leave the Church in 1997.

¶ 4 Stewart joined the Church in 1995. At the Church's insistence, Stewart liquidated her retirement savings and turned the funds over to the Church. The Church promised full repayment of these funds plus all costs and penalties for early withdrawal. Stewart was never repaid, and in 1997 she was excommunicated from the Church.

¶ 5 In 1998, Plaintiffs sued the Church, Harmston, and various Church leaders. Upon Defendants' motion, the trial court dismissed several of Plaintiffs' claims for failure to plead them with sufficient particularity. Plaintiffs filed an Amended Complaint and the matter proceeded to a jury trial in January 2002. The jury rendered a verdict in favor of Plaintiffs, but the trial court granted Defendants' motion for new trial on the grounds that the information presented at trial was insufficient to allow proper apportionment of the damages between Defendants.

¶ 6 After the grant of a new trial, Plaintiffs requested leave to file a Second Amended Complaint. Defendants filed a motion to dismiss the Second Amended Complaint. In July 2003, the trial court allowed the second amendment without ruling on the motion to dismiss. In August 2003, the trial court partially granted Defendants' motion to dismiss, dismissing all of Plaintiffs' claims except for breach of contract and unjust enrichment. The dismissed claims included fraud, constructive fraud, negligent misrepresentation, fraudulent conversion, racketeering, and intentional infliction of emotional distress.

¶ 7 Plaintiffs moved for leave to file their Third Amended Complaint. In October 2003, the trial court denied this motion, finding that the motion was untimely, that all necessary parties were not joined as defendants, and that the relief sought in the Third Amended Complaint would require the court to impermissibly judge the Church's religious doctrines. Upon the parties' stipulation, the trial court certified its August partial dismissal order and October amendment order as final appealable orders. The parties now bring these interlocutory cross appeals challenging the trial court's orders.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 Plaintiffs appeal the trial court's denial of their motion for leave to file a Third Amended Complaint. "Whether to grant or deny a motion to amend is a matter within the broad discretion of the trial court and we will not disturb its ruling unless the appealing party establishes an abuse of discretion resulting in prejudice." *Pride Stables v. Homestead Golf Club, Inc.*, 2003 UT App 411,¶ 11, 82 P.3d 198 (quotations, citations, and alterations omitted), *cert. denied,* 90 P.3d 1041 (Utah 2004).

## ANALYSIS

¶ 9 We determine that the trial court exceeded its permitted range of discretion when it denied Plaintiffs' motion for leave to file their Third Amended Complaint. Because the Third Amended Complaint differs substantially from the Second Amended Complaint upon which the trial court based its dismissal order, we decline to address the parties' substantive arguments regarding that order except as they may be implicated by our amendment analysis. Rather, we remand this matter to the trial court with instructions to accept Plaintiffs' Third Amended Complaint and conduct further proceedings consistent with this opinion.

   1. The Trial Court Abused its Discretion when it Denied the Plaintiffs Leave to File their Third Amended Complaint

■ ¶ 10 "Whether to grant or deny a motion to amend is a matter within the broad discretion of the trial court and we will not disturb its ruling unless the appealing party establishes an abuse of discretion resulting in prejudice." *Pride Stables v. Homestead Golf Club, Inc.*, 2003 UT App 411,¶ 11, 82 P.3d 198 (quotations, citations, alterations omitted), *cert. denied,* 90 P.3d 1041 (Utah 2004). It is well established that amendments are to be allowed "liberally so as to allow parties to have their claims fully adjudicated." *Nunez v. Albo*, 2002 UT App 247,¶ 19, 53 P.3d 2 (quotations and citations omitted). However,

"a party may not amend a complaint to add a claim that is legally insufficient or futile." *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57,¶ 33, 84 P.3d 1154.

¶ 11 Here, the trial court articulated three reasons for denying Plaintiffs' final motion for leave to amend: untimeliness, the court's inability to adjudicate the Church's religious doctrines, and lack of indispensable parties. We examine each of these rationales and determine them to be insufficient to warrant denial of leave to amend.

### A. Plaintiffs' Motion was Timely

■ ¶ 12 We disagree with the trial court's conclusion that Plaintiffs' motion was untimely. Although it was filed over five years after the initiation of this lawsuit, the circumstances of this case clearly render Plaintiffs' motion timely.

¶ 13 Plaintiffs' basic claims had not only survived one motion for dismissal in 1999, but had supported a jury verdict in their favor in 2002. Plaintiffs had no reason to believe that their existing claims might be deficient until the trial court changed its mind and partially dismissed their Second Amended Complaint in August 2003. Plaintiffs filed their motion to amend and Third Amended Complaint *no later than* September 2003.

¶ 14 Under these circumstances, Plaintiffs acted to amend promptly upon becoming aware of problems with their existing complaint. The trial court's decision that Plaintiffs' motion to amend was untimely is not supported in the record and exceeded the bounds of its discretion.

### B. No Adjudication of Church Doctrine Necessary to Grant Relief

■ ¶ 15 The trial court's second reason for denying Plaintiffs' motion to amend was that the Third Amended Complaint would require the fact finder to impermissibly judge the Church's religious doctrines. Civil actions that "require the courts to review and interpret church law, policies, or practices in the determination of the[ir] claims are barred by the First Amendment under the entanglement doctrine." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25,¶ 15, 21 P.3d 198.

■ ¶ 16 Here, Plaintiffs are alleging a variety of causes of action arising from the same set of decidedly secular facts. Both of the Plaintiffs assert that they gave money to the Church in exchange for promises of future earthly benefits. Hancock alleges that she was promised land and support; Stewart alleges that she was promised repayment of her retirement funds including the costs and penalties of early withdrawal.

■ ¶ 17 "[C]hurches must have 'power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Id.* (quoting *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952)). But here, Plaintiffs' claims do not necessarily implicate the Church's government, faith, or doctrine.[2] Rather, each of the claims stated in the Third Amended Complaint is supported by allegations of secular activity potentially amounting to violations of generally applicable civil law. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (upholding criminal laws of general applicability even though those laws interfere with sincerely held religious beliefs). Accordingly, the trial court erred when it relied on the entanglement doctrine to deny Plaintiffs' motion to amend.

### C. Jordan Not an Indispensable Party

■ ¶ 18 The trial court's final justification for denying Plaintiffs' motion to amend was that Douglas Jordan, Hancock's husband at the time of the events giving rise to this suit, was an indispensable party to the suit. "Under Rule 19 of the Utah Rules of Civil Procedure, a party must be joined if that party is necessary and it is feasible to join that par-

---

2. This is not to say that every allegation in the Third Amended Complaint avoids conflict with the First Amendment. For example, Plaintiffs' allegation that Hancock "never met Christ face to face as promised" appears to be an entirely religious matter beyond the courts' ability to adjudicate.

ty." *Smith v. Osguthorpe*, 2002 UT App 361, ¶ 47, 58 P.3d 854.

 ¶ 19 The trial court's decision implies a finding that Jordan is a necessary party to the suit. Such a finding is unsupported by the Third Amended Complaint, which alleges no facts that would place Jordan within the category of an indispensable party. Even if there are factual disputes about Jordan's role in this matter, it is inappropriate for a trial court to resolve those factual disputes in the course of evaluating a motion to amend. *See Timm v. Dewsnup*, 921 P.2d 1381, 1389–90 (Utah 1996) (holding that a trial court's denial of a motion to amend based on its own factual determinations regarding the underlying evidence constitutes an abuse of its discretion).

¶ 20 We conclude that Plaintiffs' motion to amend was timely under the circumstances, that the Third Amended Complaint's allegations do not necessarily require the adjudication of religious doctrine, and that the trial court abused its discretion in finding Jordan to be an indispensable party to this matter. Accordingly, we reverse the trial court's denial of Plaintiffs' motion to amend and remand this matter for further proceedings under the Third Amended Complaint.

2. Mootness of Other Issues in Light of the Third Amended Complaint

 ¶ 21 The parties raise various other issues on appeal, but these issues all pertain to the trial court's treatment of Plaintiffs' Second Amended Complaint. The Third Amended Complaint, which is now the operative pleading in this matter, contains multiple new factual allegations and, potentially, other changes. This court will not parse the differences between the two complaints to determine which, if any, of the arguments raised by the parties remain viable in light of the amendment. Rather, particularly given the interlocutory nature of this appeal, it is appropriate that any further litigation over the claims asserted in the Third Amended Complaint take place first at the trial court level.

## CONCLUSION

¶ 22 We conclude that the trial court abused its discretion when it denied Plaintiffs

leave to file their Third Amended Complaint. Issues raised in this appeal but not addressed in our amendment analysis are moot in light of the differences between the Second Amended Complaint and the Third Amended Complaint. We reverse the trial court's amendment order and remand this matter for further proceedings consistent with this opinion.

¶ 23 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and PAMELA T. GREENWOOD, Judge.