**2015 UT App 312**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LACEY ANN JOHNSON,
Appellant.

Memorandum Decision
No. 20140310-CA
Filed December 31, 2015

Third District Court, Salt Lake Department
The Honorable Vernice Trease
No. 121907617

Joanna E. Landau, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

ORME, Judge:

¶1    Lacey Ann Johnson (Defendant) appeals from her convictions on one count of retaliation against a witness, victim, or informant and one count of misdemeanor threat of violence, both enhanced under the in-concert enhancement statute.[2] Based

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

2. Defendant does not appeal her conviction for misdemeanor assault.

on the State's concessions of error with respect to the other issues raised,[3] we consider only the challenge to Defendant's retaliation conviction.

¶2     "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116.

¶3     In 2012, Defendant resided near a canal from which a neighbor regularly gathered crayfish. That summer, the neighbor's wife and Defendant were engaged in a dispute over the misbehavior of Defendant's dog. The neighbor's wife called animal control several times, and each time, Defendant was fined. Finally, on July 9, 2012, animal control impounded Defendant's dog and ultimately gave it to an animal rescue group when Defendant was unable to pay the release fee.

¶4     Just one month later, on August 10, 2012, the neighbor's wife observed Defendant crouched behind a car parked in the neighbor's driveway. After Defendant left, the neighbor's wife inspected the car and discovered that it had been scratched with a hard object, presumably a key. The neighbor's wife confronted Defendant about paying to repair the damage. Defendant refused, saying, "I don't have $900 to pay for dog fines either."

---

3. As to the in-concert enhancement of Defendant's retaliation conviction, the State concedes that the plain-language of the in-concert enhancement statute precludes the enhancement. *See* Utah Code Ann. § 76-3-203.1(5) (LexisNexis 2012). The State further concedes that the conviction and sentence entered on the threat-of-violence charge was error because Defendant was not tried on that charge. The State agrees that we should remand for the trial court to enter a proper judgment and sentence correcting these errors.

The neighbor's wife then called police who, later that evening, issued Defendant a citation for criminal mischief.

¶5    Immediately thereafter, the neighbor invited a friend to the canal to demonstrate how to catch crayfish. From among several possible routes to the canal, the neighbor chose the course that passed nearest to Defendant's house. As the neighbor and the friend approached, Defendant began to yell obscenities and told them to leave. She also referred to the neighbor as a "cop caller" and yelled for someone inside her home to bring her a taser. The neighbor responded that he would "shove [the taser] down [Defendant's] throat." Aware that Defendant had recently lost a child to sudden infant death syndrome, he also said, "Why don't you get high and pass out on another one of your babies, bitch."

¶6    The neighbor and the friend continued down to the canal. Shortly after arriving, the neighbor heard Defendant approaching while continuing to yell "cop caller" and also heard an electronic "buzzing" sound. Concerned for their safety, the neighbor and the friend left the canal another way, thereby avoiding Defendant's house. However, Defendant, Defendant's mother, and Defendant's boyfriend confronted the neighbor and the friend and blocked their way. Defendant's mother struck the neighbor in the head and Defendant kicked him in the left thigh. After escaping, the neighbor called police, who returned about an hour after Defendant had been cited for the keying incident and took Defendant into custody.

¶7    For her role in the assault, the State charged Defendant with retaliation against a witness, victim, or informant with an in-concert enhancement; assault with an in-concert enhancement; and threat of violence with an in-concert enhancement. *See* Utah Code Ann. §§ 76-3-203.1(2), 76-8-508.3(2), 76-5-107(1) (LexisNexis 2012). At trial, the court submitted only

the retaliation and assault charges to the jury, and the jury found Defendant guilty on both counts.

¶8 In considering Defendant's challenge to her retaliation conviction, we begin with what Defendant *does not* contest. The retaliation statute makes a person criminally liable if that person,

> believing that an official proceeding or investigation is pending, is about to be instituted, or has been concluded, he makes a threat of harm; or causes harm; and directs the threat or action against a witness or an informant regarding any official proceeding, a victim of any crime, or any person closely associated with a witness, victim, or informant; and as retaliation or retribution against the witness, victim, or informant.

Utah Code Ann. § 76-8-508.3(2) (LexisNexis 2012) (spacing reformatted and subsection symbols omitted). Defendant does not contest that she (1) caused harm, (2) "direct[ed] the . . . action against" a witness, informant, or victim of an offense she committed, and (3) believed an investigation or proceeding was pending against her at the time. *See id.* Instead, conceding these elements were met, she challenges only the sufficiency of the State's evidence suggesting that she intended to "retaliate" against the neighbor.

¶9 Defendant argues that, in light of the neighbor's provocative words moments before she attacked—his mean-spirited reference to Defendant's recently deceased child and his threat to shove a taser down her throat—there was insufficient evidence to find, beyond a reasonable doubt, that she was motivated not by these provocations but by an intent to retaliate for the citation when she assaulted the neighbor. She contends that the only reasonable inference is that she attacked the neighbor because of his threat and insult. Defendant concedes

that this issue was not preserved for appeal, and thus she seeks review under the plain-error and ineffective-assistance doctrines.

¶10 To establish plain error on a claim of insufficient evidence, "a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. The relative strength of two alternative, reasonable inferences drawn from the evidence is a question for the jury at trial. *State v. Ramirez*, 2012 UT 59, ¶ 13, 289 P.3d 444. "When the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). Therefore, although a defendant's alternative hypotheses may appear reasonable to this court, a jury may still conclude "that [the] defendant is guilty beyond a reasonable doubt." *State v. Blubaugh*, 904 P.2d 688, 695 (Utah Ct. App. 1995). Indeed,

> a finding that a defendant is guilty beyond a reasonable doubt is necessarily a finding that any alternative hypothesis of innocence presented at trial was *not* reasonable under the jury's view of the evidence. Consequently, an appellate court will reverse such a finding only where no reasonable juror could have taken that view of the evidence.

*State v. Cardona-Gueton*, 2012 UT App 336, ¶ 12, 291 P.3d 847 (emphasis in original). *See also State v. Lucero*, 2012 UT App 202, ¶ 13, 283 P.3d 967 (holding that merely "'[c]ontradictory [evidence] alone is not sufficient to disturb a jury verdict'") (quoting *State v. Watts*, 675 P.2d 566, 568 (Utah 1983)) (alterations in original); *State v. Buck*, 2009 UT App 2, ¶ 14, 200 P.3d 674 (concluding that a jury may reject a defendant's reasonable alternative explanation of the evidence).

¶11   As long as there is some evidence from which all the necessary elements of the charged offenses can be proved, there is sufficient evidence to find the defendant guilty beyond a reasonable doubt. *Lucero*, 2012 UT App 202, ¶ 13. It is the jury's duty—not the appellate court's—to weigh that evidence and make a determination of fact; thus, "[o]rdinarily, a reviewing court may not reassess credibility or reweigh the evidence, but must resolve conflicts in the evidence in favor of the jury verdict." *Workman*, 852 P.2d at 984.

¶12   Defendant's proffered evidence of her alternate motivation for the assault on the neighbor is "merely contradictory." *See Lucero*, 2012 UT App 202, ¶ 13. Defendant suggests, for example, that her supposed fear of the neighbor, coupled with his inflammatory statements, was so extreme that she obviously must have "acted in defense of [his] provocation" and not in response to "his role in any official proceeding or investigation." Defendant's personal view of events does not, however, render the State's evidence "sufficiently inconclusive or inherently improbable" so as to warrant a reversal. *Id.* ¶¶ 12–13 (citation and internal quotation marks omitted). Juries are often confronted with evidence supporting alternative theories and asked to weigh the evidence for and against each explanation. *See, e.g., id.* ¶¶ 10–12. And it is expected that the jury, in reaching its decision, will choose to believe one explanation even as it disregards the other. *Id.* ¶ 13.

¶13   In the instant case, the jury might have found it difficult to accept that Defendant was acting defensively, much less in fear for her safety, when Defendant, her mother, and her boyfriend purposely left her house to find, confront, and assault the neighbor—who by that time had ceased to engage with Defendant. Especially with Defendant repeatedly calling the neighbor a "cop caller" before and during the assault, the evidence was sufficient for the jury to conclude that Defendant was at least partially motivated to attack the neighbor because of

residual anger from the citation she so recently received—anger that was perhaps intensified by the neighbor's wife's previous complaints about her dog, the resulting citations, and the eventual loss of her dog. Furthermore, section 76-8-508.3 does not require Defendant to act with the single-minded motive of retaliation—and we decline to read in such a requirement. *See* Utah Code Ann. § 76-8-508.3(2)(b)(ii) (requiring only that the person "directs the threat or action . . . as retaliation or retribution").

¶14    Therefore, the neighbor's provocation of Defendant as a possible explanation for her assault on him did not preclude her conviction for retaliation. "Given the evidence and the inferences reasonably drawn therefrom, there was sufficient evidence to support the conviction." *State v. Stringham*, 2013 UT App 15, ¶ 4, 295 P.3d 1170 (per curiam). "We accordingly affirm, as we cannot conclude in light of this evidence that 'reasonable minds *must have* entertained a reasonable doubt' about the essential elements" of Defendant's retaliation charge. *State v. Nielsen*, 2014 UT 10, ¶ 49, 326 P.3d 645 (quoting *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892) (emphasis added).

¶15    Our analysis under the rubric of ineffective assistance of counsel is similar. Ineffective assistance, like plain error, is an exception to the preservation rule. *State v. Kozlov*, 2012 UT App 114, ¶ 35, 276 P.3d 1207. To win reversal on ineffective-assistance grounds, a defendant must prove both that counsel's performance was objectively deficient and that it resulted in prejudice. *Id.* Thus, "a failure to prove either element defeats the claim." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769. Our resolution of Defendant's plain-error claim resolves her ineffective-assistance claim because if the trial court did not plainly err in submitting the charge to the jury, it follows that counsel's acquiescence in the charge being submitted was not objectively deficient performance. *State v. Gailey*, 2015 UT App 249, ¶ 7, 360 P.3d 805.

¶16    As explained above, "the evidence and reasonable inferences to be drawn therefrom were sufficient to support the jury's verdict." *Stringham*, 2013 UT App 15, ¶ 5. Thus, a motion for directed verdict would have been futile. Because the failure to file a futile motion is not an error, *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546, "trial counsel did not render deficient performance by failing to make a motion for a directed verdict . . . [based upon] the sufficiency of the evidence," *Stringham*, 2013 UT App 15, ¶ 5. Thus, Defendant's "failure to prove [deficient performance] defeats the claim." *Hards*, 2015 UT App 42, ¶ 18.

¶17    In summary, Defendant has not shown plain error in her conviction on the retaliation charge, because there was sufficient evidence of retaliation to support each element charged. The jury was entitled to accept the evidence it believed and reject the evidence it did not, while this court is bound to view the evidence as it best supports the jury's verdict. Because there was sufficient evidence to submit the retaliation charge to the jury, trial counsel was not ineffective when he chose not to raise a futile motion to the contrary. While we affirm Defendant's retaliation conviction, we remand for the trial court to correct Defendant's other convictions and her sentence.

———————