**2016 UT App 152**

THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MATTHEW ALAN CRIPPEN,
Appellant.

Memorandum Decision
No. 20140051-CA
Filed July 21, 2016

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 121910314

Nathalie S. Skibine, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL
W. BENCH concurred.[1]

ORME, Judge:

¶1     Matthew Alan Crippen appeals his convictions on two counts of forcible sodomy, first degree felonies, *see* Utah Code Ann. § 76-5-403(2), (4) (LexisNexis 2012), primarily on the ground that the testimony of the victim (Victim) was inconsistent to such an extent that Victim's account was inherently improbable and therefore could not be reasonably relied upon to convict him beyond a reasonable doubt. We affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

¶2    Although Crippen disputes the reliability of Victim's account of the events that precipitated this case, we recite the facts in the light most favorable to the jury verdict. *See State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116 ("When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly.").

¶3    Crippen lived with Victim, her son, her sister, her grandmother, and another male. Victim's sister was Crippen's girlfriend. Victim suffers from apparent, but undiagnosed, intellectual disabilities. She also suffers from seizures, a condition that has precluded her from obtaining a driver license.

¶4    Two weeks after Crippen moved in with Victim and her family, Victim's sister asked Victim to accompany Crippen as he went to pay for a rental car. According to Victim, once they were at the rental car agency parking lot, Crippen asked Victim if she thought he was sexy, and when she said no, he pulled out his penis and told Victim to put it in her mouth. Crippen attempted to force his penis into Victim's mouth, but it touched only her lips. Victim then tried to exit the car, whereupon Crippen told Victim that he would drive her home. Instead, he drove to another location, took out his penis once more, and this time he succeeded in forcing it into her mouth, following which he ejaculated "a little." Victim then wiped her mouth on her shirt.

¶5    After the assault was over, Crippen warned Victim "not to tell anybody" and to "keep quiet." The very next day, however, Victim reported the assault to her sister and grandmother. When a police officer interviewed Victim, she gave the officer the shirt she had been wearing at the time of the assault. Later, she gave another officer a pair of boxer shorts that Victim believed belonged to Crippen and that Victim had

collected two days after the assault.[2] She told the police, as recounted by an officer at trial, that Crippen "forced her to perform oral sex on him in the vehicle at one of the places they stopped." When an officer interviewed Crippen, he denied even knowing Victim or Victim's sister, his girlfriend.

¶6 Some time later, Crippen was jailed. While he was in jail, the State recorded a phone conversation between him and an unidentified woman in which he acknowledged having had oral sex with Victim. In Crippen's telephone account, Victim put her hand on his penis and referred to it as "a little one." Crippen, "insulted" and "pissed," told "this bitch" to "put [his penis] in [her] mouth." Although Crippen claimed during the phone conversation not to have ejaculated, he expressed concern that his DNA might be found on Victim's shirt.[3] He also denied that their sexual contact was forcible and said of Victim, "She's lying, she's probably not very good at lying, and so it probably won't go too far."

---

2. An officer of the Unified Police Department interviewed Victim first and collected Victim's shirt. After discovering that the alleged assault occurred within the jurisdiction of the Murray Police Department, the officer referred Victim's complaint there. Three months later, an officer from the Murray Police Department conducted a follow-up interview of Victim, interviewed Crippen, and took the boxer shorts.

3. Police took a swab of Crippen's mouth and compared it to the shirt and the boxer shorts. Although seminal fluid residue was found on the boxer shorts, it did not match Crippen's DNA. No semen was found on Victim's shirt. These results are largely irrelevant, given Crippen's admission during the phone call that a sexual encounter between him and Victim in fact occurred.

¶7     Prior to trial, Crippen moved to exclude evidence of Victim's seizures and mental disability on the ground that introduction of such evidence would be unduly prejudicial to Crippen and unfairly cause the jury to feel sympathetic toward Victim. The State explained that it intended to introduce such evidence in order to "allow the jury to have a basis to determine whether she's even capable of consenting." Because the State had not identified an expert to testify as to Victim's intellectual abilities and because the State did not provide sufficient advance notice to Crippen that it was going to pursue that argument, the trial court ruled that evidence of Victim's mental capacity could not be introduced. The trial court noted, however, that to the extent Victim's intellectual disability was "obvious, there might be some inference that the jury [could] make on its own."[4]

¶8     Although not all aspects of Victim's trial testimony were consistent with the accounts she gave police, her testimony was consistent with her claim that Crippen sexually assaulted her at the rental car agency. She also testified to the assault at the second location—an accusation that the officers who interviewed Victim did not recall from their interviews with her. She further volunteered that she lacked a driver license due to seizures and that she had been raped many times before.

---

4. Although we cannot know precisely how the jury evaluated her testimony, the State points to several aspects of Victim's testimony that may have suggested to the jury that she suffered "intellectual challenges." For example, Victim testified that she was unsure which city she lived in, that Crippen tried "to open" his penis, and that she believed her shirt had evidence of the assault on it because Crippen touched it during the assault. The prosecutor also found it necessary to refocus Victim's meandering testimony on more than one occasion.

¶9    Defense counsel requested a mistrial after Victim's statement about her seizures and objected after her second reference to having been raped before, but the trial court declined to grant a mistrial because it concluded that the statements were of minimal impact and "would not garner any particular sympathy" for Victim given "the context in which [the statements] came out." The trial court further concluded that none of these statements were prejudicial to Crippen, especially as the prior rapes were not attributed (or attributable) to him. The court did, however, give a curative instruction to the effect that the jury was "not [to] let any bias, sympathy or prejudice that [it might] feel toward one side or the other influence [its] decision in any way."

¶10    In her cross-examination of Victim, defense counsel focused on purported inconsistencies between the various versions of Victim's story as shared with police, at the preliminary hearing, and at trial. When pressed, however, Victim maintained her basic story and suggested that perhaps the officers misunderstood her during her interviews because her apartment was very noisy during the interviews. On the ground that Victim's testimony was inherently improbable, Crippen moved the trial court for a directed verdict, which was denied.

¶11    After submission of the case to the jury, it returned a guilty verdict. Crippen appeals.

I. Victim's Testimony Was Not Inherently Improbable.

¶12    As we recently noted, "[a]s long as there is some evidence from which all the necessary elements of the charged offenses can be proved, there is sufficient evidence to find the defendant guilty beyond a reasonable doubt." *State v. Johnson*, 2015 UT App 312, ¶ 11, 365 P.3d 730. Although this court will reverse a conviction where "the evidence [presented] is sufficiently inconclusive or inherently improbable that reasonable minds

must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted," *see State v. Hirschi*, 2007 UT App 255, ¶ 16 n.7, 167 P.3d 503 (alteration in original) (citation and internal quotation marks omitted), a "[d]efendant's personal view of events does not . . . render the State's evidence sufficiently inconclusive or inherently improbable so as to warrant a reversal," *Johnson*, 2015 UT App 312, ¶ 12 (citation and internal quotation marks omitted).

¶13  In judging whether testimony is inherently improbable, a witness's inconsistency is not dispositive.[5] *See State v. Marks*, 2011 UT App 262, ¶ 79, 262 P.3d 13 (declining to treat a sexual abuse victim's testimony as inherently improbable despite the victim's inconsistent testimony regarding his own age and arousal). *See also State v. Phillips*, 2012 UT App 286, ¶ 24 n.7, 288 P.3d 310 (explaining that it is "not unusual that a child's testimony be somewhat inconsistent" in a case of sexual abuse) (citation and internal quotation marks omitted). Similarly, "the consideration of whether [a victim's] testimony is inherently improbable must be undertaken with [his or her intellectual] limitations in mind, lest we adopt a standard that leaves the most vulnerable victims of sexual abuse without recourse."

---

5. For this reason, this case is unlike *State v. Robbins*, 2009 UT 23, 210 P.3d 288, upon which Crippen relies for the proposition that Victim's testimony was too inherently improbable to form the basis for his conviction when, as he sees it, there was no other direct or circumstantial evidence on which to convict him. His premise is incorrect. His admissions over the telephone corroborate Victim's account in significant ways. Further, in *Robbins* the Supreme Court stated that the victim made "patently false statements" during the course of her testimony. *Id.* ¶ 22. Crippen has not demonstrated that Victim's testimony, although it was not a model of clarity and consistency, was "patently false."

*Marks*, 2011 UT App 262, ¶ 78. *See also State v. Adams*, 955 P.2d 781, 783 (Utah Ct. App. 1998) (noting that all witnesses, even the intellectually disabled or incapacitated, are presumed competent to testify and holding that evidence a person "could not spell her name, count past twenty-nine, or correctly identify her belly button, knee, or vagina" did not demonstrate that the person could not "appreciate the need to tell the truth" or communicate information accurately to others). Failure to allow for some inconsistency in the testimony of mentally challenged individuals would likely prevent any charges from being brought against abusers of such individuals. *See* Kate Stone Lombardi, *Rape and the Mentally Retarded*, N.Y. Times (July 25, 1993), http://www.nytimes.com/1993/07/25/nyregion/rape-and-the-mentally-retarded.html.

¶14 Much like the victim in *Phillips*, Victim's testimony was corroborated by other evidence. *See* 2012 UT App 286 ¶ 24. In *Phillips*, another case of sexual assault in which there was no DNA evidence, *see id.* ¶¶ 4–5, the victim's brother corroborated a statement made by the defendant, and police corroborated the victim's account of the physical condition of the defendant's room, *id.* ¶ 24. Here, Crippen himself acknowledged that he had engaged in oral sex with Victim in much the same manner as Victim alleged—aside from the question of consent.

¶15 We also note that in this he-said-she-said situation, Crippen's *own* credibility was severely compromised both by his initial denial to police that he knew Victim, much less his own girlfriend, and by the recording of his jailhouse phone call. As noted, Crippen lied about whether he knew Victim when police first interviewed him. But at trial, despite his initial statement to police, it was conceded that he lived with Victim at the time of the alleged assault, and a recording was played of his telephone-call admission to having had oral sex with her. Moreover, although Crippen's statements during the jailhouse phone call were not evidence of a lack of consent, those statements do tend

to corroborate Victim's overall account. As Victim testified, and as Crippen admitted during the phone call, the two did engage in oral sex. Crippen also acknowledged that he called Victim a "bitch" and that *he told her* to put his penis in her mouth, a detail that closely matches Victim's account. And while we agree with Crippen that his "statements to the police that he did not know [Victim] or her sister [were] not actual evidence of [his] guilt," such statements obviously called his overall credibility into question.

¶16    The jury was not obligated to believe Crippen's account of events, and "[i]t [was] the jury's duty—not the appellate court's—to weigh that evidence and make a determination of fact." *State v. Johnson*, 2015 UT App 312, ¶ 11, 365 P.3d 730. Given that "disregarding witness testimony as inherently false should be an uncommon course of action," which appellate courts will undertake only when the witness's credibility is so far impeached as to be unbelievable by a reasonable jury, *see Marks*, 2011 UT App 262, ¶ 78, in the instant case, we conclude that Victim's testimony was not inherently improbable.

II. Because Crippen Has Not Shown He Was Prejudiced by Victim's Challenged Statements, His Claims Do Not Merit Reversal.

¶17    During Crippen's trial, Victim made three statements that Crippen argues the trial court should have dealt with differently. First, after Victim stated that she did not "know how to drive" when the prosecutor asked her who was driving on the day in question, the prosecutor followed up with the question, "You don't have a driver's license?" Instead of answering yes or no, Victim volunteered the explanation, "I have seizures." Crippen's counsel immediately objected and then moved for a mistrial. The trial court denied the motion, citing the context in which the remark was made, namely that the remark was inadvertent and elicited no undue sympathy for Victim.

¶18    Second, when the prosecutor asked why she was scared when Crippen pulled out his penis, Victim replied, "I've been raped all my life." Crippen did not object at the time, but did when Victim later repeated the claim.

¶19    Third, Victim stated that she told Crippen, after he exposed his penis to her, to "leave me alone and move . . . I'd been raped plenty of times." At this point, counsel for Crippen did object. After a brief discussion at the bench, direct examination continued. Following direct examination, Crippen's counsel put on the record that his objection was to the prosecution's leading questions. Crippen's appellate counsel successfully moved to correct the record to reflect that the objection was also premised on the ground that Victim's statement was "irrelevant" and "unfairly prejudicial." *See* Utah R. App. P. 11(a) (outlining procedure for correcting or modifying the record on appeal when necessary to "truly disclose[] what occurred in the trial court").

¶20    Before jury deliberation began, the trial court instructed the jury to lay aside any prejudices against, or sympathies for, either party in reaching its decision. Crippen now argues that the trial court's failure to declare a mistrial or otherwise deal more forcefully with Victim's references to her propensity for seizures and to the fact that she had been raped before, albeit clearly not by Crippen, constitutes reversible error. For the reason that Crippen has not demonstrated prejudice, we disagree.

A.    Victim's Mention of the Fact That She Suffers from Seizures and Thus Cannot Obtain a Driver License Was Not Prejudicial and Does Not Warrant Reversal.

¶21    "A trial court's denial of a motion for a mistrial will not be reversed absent an abuse of discretion," *State v. Wach*, 2001 UT 35, ¶ 45, 24 P.3d 948, and we will not determine that a court abused its discretion "[u]nless the record clearly shows that the trial court's decision is plainly wrong in that the incident so

likely influenced the jury that the defendant cannot be said to have had a fair trial," *State v. Butterfield*, 2001 UT 59, ¶ 46, 27 P.3d 1133 (citation and internal quotation marks omitted). Accordingly, in order to win reversal, a defendant must demonstrate prejudice by "show[ing] that there is a substantial likelihood that the jury would have found him not guilty had the improper statement not been made." *Id.* ¶ 47.

¶22 We conclude that Victim's testimony to the effect that her seizures prevented her from obtaining a driver license did not prejudice Crippen because such testimony (1) had no direct bearing on the facts of Crippen's case, (2) had no connotation of frailty such that the jury likely developed unfair sympathy for Victim, (3) was not the result of prosecutorial misconduct,[6] and (4) was mitigated via a curative instruction.

---

6. For this reason, we conclude that the cases Crippen cites in support of his position—*State v. Akok*, 2015 UT App 89, 348 P.3d 377, and *State v. Campos*, 2013 UT App 213, 309 P.3d 1160—are inapposite. Whereas in *Campos* the prosecutor improperly argued that the jury should punish the defendant because the victim could no longer "walk his daughter down the aisle," 2013 UT App 213, ¶¶ 48, 53, and in *Akok* the prosecutor contended that the jury "ha[d] a duty to protect the alleged victim" from the defendant, 2015 UT App 89, ¶¶ 15–16 (alteration in original), in the instant case Crippen does not allege prosecutorial misconduct. And the prosecutor did not intentionally elicit the challenged statement, nor did he follow up on it once it was made. Even more tellingly, in neither *Campos* nor *Akok* did we rely on the prohibited statements alone in reaching our decisions to reverse. *See Akok*, 2015 UT App 89, ¶¶ 24–25 (noting that the trial court declined to give a stipulated curative instruction addressing the prosecutorial misconduct and holding that in doing so it failed to "neutralize the prejudicial effect of the

(continued…)

B.     Victim's Two References To Having Been Raped Before Did Not Prejudice Crippen and Thus the Trial Court's Failure To Exclude Those Statements Does Not Warrant Reversal.

¶23   Crippen argues that his objection to Victim's second reference to being raped preserves his claim that the trial court should have excluded both of Victim's statements that she had been raped, in accordance with rule 403 of the Utah Rules of Evidence. Assuming, without deciding, that Crippen is right as to preservation, "[w]e review a trial court's decision to admit or exclude evidence under rule 403 using an abuse of discretion standard."[7] *State v. Cristobal*, 2012 UT App 181, ¶ 3, 282 P.3d 1064

---

(…continued)

prosecutor's statement"); *Campos*, 2013 UT App 213, ¶¶ 71–72 (noting that the cumulative effect of the prosecutorial misconduct plus a jury instruction that erroneously shifted the burden of proof from the State to the defendant merited reversal of the defendant's conviction). Given that no such circumstances existed in the case now before us, *Akok* and *Campos* do not require reversal here.

7. For its part, the State, in its brief, argues that because Crippen did not "ask the trial court to remedy any perceived prejudice from either statement . . . [,] move for a mistrial based on these statements, . . . ask the trial court to strike the testimony[,] or give the jury a curative instruction," Crippen failed to put the trial court on notice as to any further complaint about these statements and "did not alert the trial court of the specific error 'complained of.'" *See State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 ("Generally speaking, a timely and *specific* objection must be made in order to preserve an issue for appeal.") (emphasis added). Thus, the State insists that Crippen did not preserve the issue for appeal and that we should review this issue only for

(continued…)

(citations, brackets, ellipses, and internal quotation marks omitted). And even assuming, without deciding, that an abuse of discretion occurred, "we will not disturb [a trial court's] ruling unless the appealing party establishes an abuse of discretion resulting in prejudice." *Hancock v. True & Living Church of Jesus Christ of Saints of the Last Days*, 2005 UT App 314, ¶ 10, 118 P.3d 297 (citation and internal quotation marks omitted). Because a party must prove both that the trial court abused its discretion and that the alleged abuse resulted in prejudice to the party, failure to prove either is determinative of the outcome. *See Woodward v. LaFranca*, 2016 UT App 141, ¶ 10 (noting that "even if we were to conclude that the trial court [erred] . . . , we would nevertheless affirm where it is clear in context that, despite the [error], a contrary outcome as to that particular [issue] . . . would not change the trial court's ultimate decision"). *Cf. State v. Potter*, 2015 UT App 257, ¶ 7, 361 P.3d 152 ("In the event it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without analyzing [the other required elements of such a claim].") (citation and internal quotation marks omitted).

¶24    Victim never stated, or even implied, that Crippen had raped her on any other occasion. Indeed, the implication of her statements that she had been "raped plenty of times" and "all [her] life" was that a person or persons *other than* Crippen had assaulted her because Crippen had only lived with Victim and her family for two weeks as of the time of the assault. Thus, it is difficult to see how the jury would have inferred, as Crippen

_____

(…continued)

plain error. *See State v. Bakalov*, 1999 UT 45, ¶ 56, 979 P.2d 799. Because we conclude, however, that Crippen has not shown that the alleged error had a prejudicial effect in any event, we need not determine whether Crippen actually preserved this argument.

argues it did, that he had raped her on multiple prior occasions over a long span of time.

¶25   In sum, Crippen's challenges to his conviction fail. Victim's testimony was not inherently improbable such that there was insufficient evidence to convict Crippen beyond a reasonable doubt, particularly given Crippen's partial corroboration of that testimony. And because Crippen also has not shown that Victim's allegedly improper statements prejudiced him at trial, reversal of his conviction is not warranted.

¶26   Affirmed.

——————