This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                      **No. A-1-CA-34774**

**MARIO MOLINA, a/k/a**
**MARIO AVITA MOLINA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff Foster McElroy, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Office of Erlinda Ocampo Johnson, L.L.C.
Erlinda O. Johnson
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1} The State appeals the district court's order granting Defendant's motion to withdraw his plea. We reverse the district court's decision allowing Defendant to withdraw his plea.

## I. BACKGROUND

{2} On October 21, 1991, Defendant was arrested and charged with criminal sexual penetration (CSP) and false imprisonment. NMSA 1978, §§ 30-9-11(D) (1991, amended 2009), 30-4-3 (1963). At the time, Defendant was twenty-one years old and had been in the United States illegally for three months. According to the criminal complaint, filed on October 23, 1991, the State alleged that Defendant and his boss picked up two female hitchhikers and forced them to consume alcohol. One of the victims, Cora, was between the ages of thirteen and sixteen. The State alleged that Defendant and his boss held the victims against their will. Based on the criminal complaint, Defendant forcibly raped Cora. The victims were able to escape and contact police.

{3} Defendant's attorney, Mr. Sam B. Sanchez, testified that he had long discussions with Defendant about the charges and penalties involved in the case against him. Defendant told Mr. Sanchez that he did not wish to go through the preliminary hearing at which the alleged victim was scheduled to testify but wanted to waive the hearing and go directly to the district court. Shortly thereafter, on

November 8, 1991, Defendant entered into a plea agreement whereby he pled guilty to the charges in exchange for a deferred sentence, three years probation, and an agreement to be deported to Mexico and not return to the United States during the term of the probation. Defendant was transported to El Paso, Texas, and was deported after a hearing with the Immigration and Naturalization Service. The deportation documents provide that Defendant must request permission to return to the United States, and that any person who returns within five years without permission is guilty of a felony. Subsequently, Defendant reentered the United States illegally and was in the country for eighteen years when he was again taken into custody and charged with illegal entry of a previously removed alien.

**{4}** Defendant filed a Rule 1-060(B)(6) NMRA motion to withdraw his 1991 plea, or in the alternative, a petition for writ of error coram nobis claiming that the attorney who represented him in 1991 was ineffective in that he failed to advise him that entering the plea agreement would result in his automatic deportation. The State filed a motion to dismiss Defendant's petition and Defendant filed a response.

**{5}** A hearing was held on the State's motion to dismiss and on Defendant's claim of ineffective assistance of counsel. Defendant and his daughter testified at the hearing. Defendant claimed that, after his arrest in 1991 his attorney told him that there was no evidence to convict him and that he understood that to mean he would

be set free. Defendant also testified that his attorney gave him contrary advice by telling him it would be difficult to win the case because it was his word against the victim's word. Defendant testified that his attorney never went over the charges with him, he was never arraigned, and the terms of the plea agreement were never explained to him. Defendant believed that, if he signed the plea agreement and finished the three-year probationary period, all of the charges would "disappear" and his record would be clean. Defendant stated that he did not know that deportation was included in the agreement. He agreed that there was an interpreter present at the plea hearing, but claimed that the plea agreement was not read "word for word," and he was never told that the plea would subject him to automatic deportation. Defendant filed an affidavit on July 10, 2014, stating that Mr. Sanchez told him he "needed to enter a guilty plea" although he had told him he had not committed the crime and had asked Mr. Sanchez to investigate. His affidavit states that he was not advised that the plea would subject him to automatic deportation, or that by pleading guilty he would be facing certain deportation.

{6}     The district court entered a letter ruling denying Defendant's request to withdraw his plea based on an illegal sentence and denied the State's motion to dismiss. Nevertheless, the district court ruled that Defendant made a prima facie showing of ineffective assistance of counsel based on his affidavit, his testimony, and

4

the testimony of his daughter. An evidentiary hearing was scheduled to determine whether Defendant should be allowed to withdraw his plea.

{7}     At the evidentiary hearing, Defendant's attorney, Sam Sanchez, testified that he had long discussions with Defendant about the charges, the penalties, the consequences of a plea, and the ramifications of a conviction. Mr. Sanchez testified that Defendant was informed that if he was convicted it would affect his immigration and naturalization status and could prevent him from getting that status "secured."

{8}     Following the evidentiary hearing, the district court issued a second letter ruling finding that Mr. Sanchez' representation was deficient and his deficient performance prejudiced Defendant. The district court rejected "[D]efendant's testimony as unreasonable that he did not know that as a condition of his probation that he would have to leave the United States for three years." However, the district court also found that Defendant did not understand that he would be ineligible to apply for legal status or to be sponsored for citizenship by his daughter. The district court concluded that Defendant should be able to withdraw his plea. The letter ruling was incorporated into an order, which included much of the contents of the letter rulings. The State appealed the district court's decision. *See State v. Gutierrez*, 2016-NMCA-077, ¶ 31, 380 P.3d 872 (holding that the state has a right to appeal the grant of a motion to withdraw a plea).

## II.    DISCUSSION

{9}    In response to the State's argument that the district court erred in ruling that Defendant may withdraw his plea, Defendant claims that he is entitled to withdraw his plea because the attorney who represented him at the plea hearing was ineffective, and he was prejudiced as a result. Defendant argues that he was given inaccurate and deficient advice by his attorney with respect to immigration consequences. We review the district court's decision for abuse of discretion, viewing the facts relied on by the district court in making its decision to determine if they are supported by substantial evidence, and reviewing the factual record in the light most favorable to the decision. *See id.* ¶ 32. For Defendant's claim of ineffective assistance of counsel, we decide de novo whether counsel was ineffective as a matter of law, deferring to the findings of the district court if supported by the record. *See id.* ¶ 33.

{10}    For ineffective assistance claims, a defendant is required to show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the [defendant]." *State v. Paredez,* 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). If the defendant is prejudiced by the deficient advice, the attorney's representation was ineffective, and the defendant may withdraw the guilty plea. *See id.* ¶ 19.

## A. Deficient Performance

{11}    On appeal, the State concedes that the failure by Defendant's attorney to advise him regarding the effect of a guilty plea on his eligibility to obtain legal status or citizenship was constitutionally deficient, "and while we are not bound by this concession," we agree. *State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076.

{12}    We conduct our own analysis of the conceded issue. *State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775. "[A]n attorney's non-advice to an alien defendant on [specific] immigration consequences of a guilty plea would also be [considered] deficient performance." *Paredez*, 2004-NMSC-036, ¶ 16. Defense counsel's advice on the specific immigration consequences requires an individualized analysis of any apparent immigration consequences for his client, beyond deportation. *See State v. Carlos*, 2006-NMCA-141, ¶ 15, 140 N.M. 688, 147 P.3d 897. In this case, Mr. Sanchez provided very generalized advice that any any conviction would affect his immigration and naturalization status. Defendant was an undocumented non-resident. Mr. Sanchez also advised that any conviction *could* prevent him from getting that status "secured." This advice does not make sense, much less provide for an individualized analysis, and amounts to non-advice. Mr. Sanchez failed to advise Defendant of the consequences of entering a plea of guilty to a crime of moral turpitude and violence. Those consequences, in turn, prevented Defendant from ever

being able to legally return to the United States after the probationary period and made him ineligible to petition for citizenship in the future.

{13} We note that in his amended petition and in the August 18, 2014 hearing, Defendant claimed that he was never informed that by entering into the 1991 plea agreement with the State, he was subject to automatic deportation to Mexico. Defendant testified that he would not have signed the agreement if he knew that it included a requirement that he would be automatically deported, adding that he would not have done so because his partner was pregnant at the time. The district court specifically rejected, as unreasonable, Defendant's testimony that he did not know that a condition of his probation was that he would be automatically deported. Therefore, Defendant's claim that he did not know he would be subject to automatic deportation as a result of signing the plea agreement was not the basis for the district court's finding of a prima facie showing of ineffective assistance of counsel.

{14} Instead, the district court based its finding on the failure to advise Defendant that a "[p]lea of guilty to a crime of moral turpitude and violence would prevent him from being able to ever return legally to the United States" or to seek citizenship in the future. The district court determined that it was not enough for Defendant's counsel to tell him that the entry of the plea in this case " 'may' or 'could' affect his future ability to remain in [the United States]." Because defense counsel did not

explain the exact consequences of entering a guilty plea to CSP and false imprisonment, that he would not be permitted to reenter the United States after the probationary period and would not be eligible to petition for legal status, the district court found that Defendant should be allowed to withdraw his plea. Accordingly, any evidence demonstrating that Defendant suffered prejudice must have been in connection with his attorney's failure to inform him of the exact consequences of the plea agreement.

**B.    Prejudice**

{15}    We must still determine whether there was a sufficient showing of prejudice to Defendant as a result of counsel's deficient performance. In the context of a motion to withdraw a plea, prejudice is shown by presenting evidence that there is a reasonable probability that a defendant would have chosen to proceed to trial rather than sign a plea agreement. *See Paredez*, 2004-NMSC-036, ¶ 20.

{16}    The State argues that Defendant did not show that he would not have entered into the plea agreement if he had been advised by his attorney that the convictions entered as a result of the plea would make him ineligible for legal entry into the United States or for United States citizenship. However, the district court's findings include a general statement that Defendant suffered prejudice, but do not include findings specifically demonstrating prejudice resulting from the effects of the plea on

his ability to reenter or remain in the United States. We therefore look to the record to determine if evidence was presented to support the district court's general statement.

**{17}** As we stated above, Defendant must show that there is a reasonable probability that he would not have entered into the plea agreement and would have insisted on going to trial if he had been informed that the plea would prevent him from reentering the country and from seeking legal status in this country. *See Paredez*, 2004-NMSC-036, ¶ 20; *see also Ramirez v. State*, 2014-NMSC-023, ¶ 8, 333 P.3d 240. There exists no particular formula for determining prejudice. *See State v. Favela*, 2015-NMSC-005, ¶ 19, 343 P.3d 178. However, a showing of prejudice cannot be based only on uncorroborated self-serving statements. *See id.*; *Carlos*, 2006-NMCA-141, ¶ 20.

**{18}** A finding of prejudice can be based on corroborating evidence, including pre-conviction statements and actions, statements of intent to go to trial, assertions of innocence, benefits of the plea, the strength of the case against the defendant, the impact of the defendant's connection with the United States on his decision to enter a plea, how quickly the defendant moved to withdraw his plea, and evidence that a different plea might have been negotiated that would have avoided automatic deportation. *See, e.g.*, *Favela*, 2015-NMSC-005, ¶¶ 19-21; *State v. Gallegos-Delgado*, 2017-NMCA-031, ¶ 21, 392 P.3d 200; *State v. Tejeiro*, 2015-NMCA-029, ¶ 15, 345

P.3d 1074; *Carlos*, 2006-NMCA-141, ¶ 20. As discussed in *Favela*, our courts have adopted a broad approach with respect to how prejudice can be demonstrated by requiring a defendant to convince the court that a decision to reject a plea agreement would have been rational. 2015-NMSC-005, ¶ 18. The approach is not mechanical but is determined based on the facts of each case. *Gallegos-Delgado*, 2017-NMCA-031, ¶ 20.

{19} We cannot agree that there was evidence of prejudice presented to the district court that would show that there was a reasonable probability that Defendant would have gone to trial instead of pleading guilty. First, we note that there is insufficient evidence in the record to determine the strength of the CSP and false imprisonment charges against Defendant. Given the nature of the crimes charged, however, Defendant received a considerable benefit from the plea agreement that provided for a deferred sentence, only three years of probation, and an agreement to be deported back to Mexico. As found by the district court, Defendant had an attorney who was fluent in Spanish, the documents clearly spelled out the conditions of the plea agreement, his attorney was careful to explain the terms to Defendant, and Defendant "wanted to benefit from the bargain." Defendant opted to waive the hearing and move his case to the district court. Defendant's attorney testified that a few days later, the State made a plea agreement offer and Defendant decided to accept the offer in order

to avoid "the whole trial situation." There is nothing to indicate that Defendant sought or even suggested the idea of a plea agreement that would have avoided deportation. Furthermore, Defendant waited twenty-three years after he entered the plea agreement to file his motion to withdraw his plea. For all those years, he had been living illegally in the United States and had a wife and children, but at the time that he entered the plea he had been in the country for only three months, and his statement twenty-three years later that his partner was pregnant is irrelevant because the unborn child was not yet a citizen of any country. Furthermore, because Defendant was not legally in the country at the time of his plea, he faced the possibility of deportation whether he was convicted of a crime or not. Also, his attorney informed him that his case would be difficult to win because it was his word against the word of the alleged victim. Under these circumstances, we believe that rejecting the plea agreement would not have been a rational decision by Defendant. More importantly, Defendant has presented no evidence otherwise.

{20} Defendant claims that he would have been able to gain legal status via a petition from his daughter, a thorough investigation into the original charges against him would have likely convinced him to go to trial, and Defendant denied the charges of rape filed against him. However, statements regarding the outcome of a petition for legal status or the outcome of an investigation into the rape charges are speculative

and do not provide the requisite evidence of prejudice. Defendant did not state at the hearing that he denied the allegations before he entered his plea. Instead, he made the statements of innocence in his affidavit filed twenty-three years after the plea was signed. Our review of the record convinces us that Defendant presented nothing to show that he would have opted to go to trial if he had known that entering the plea agreement would have rendered him ineligible for legal status at some point in the future. In sum, Defendant had little connection to the United States before he was deported, he benefitted from a very favorable plea offer, he made statements indicating he wanted to avoid trial, he did not seek a more favorable plea negotiation, he waited twenty-three years to attempt to withdraw his plea, and the circumstances indicate that it would not have been rational to reject the plea agreement.

{21} Based on our review of the factual record in this case, the evidence does not support a finding that Defendant suffered prejudice under *Paredez* and its progeny. Although Defendant's counsel was deficient, the prejudice prong of the test for ineffective assistance of counsel was not met in this case. *See Carlos*, 2006-NMCA-141, ¶ 10 (requiring that a defendant show *both* that his attorney's performance was deficient, and that the deficient performance prejudiced the defense such that, but for the attorney's performance, there is a reasonable probability that the defendant would have chosen to go to trial rather than enter a plea). We conclude that

under the facts of this case it was an abuse of discretion for the district court to allow Defendant to withdraw his guilty plea.

**CONCLUSION**

{22}    For the reasons discussed in this opinion, we reverse the district court's decision to allow Defendant to withdraw his guilty plea, and we remand for reinstatement of the plea agreement.

{23}    **IT IS SO ORDERED.**

 

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**J. MILES HANISEE, Judge**